son in charge of his office replied that he was not authorized to enter into any agreement in regard to the case. On the 20th day of January, 1902, the plaintiff's attorney was engaged at special term in Kings county, and, not having found the plaintiff, he sent his clerk to Ballston, and made application for the postponement of the trial, stating the engagement of plaintiff's attorney and his inability to find the plaintiff. The motion was denied. Although the case was No. 16 on the calendar, the complaint was dismissed on motion of the defendant's attorney the first day of the term. The next morning the defendant's husband called for his mail at said banker's, and was informed that he was wanted by the plaintiff's attorney, and went to his office. The plaintiff's attorney thereupon called the representative of the defendant at Ballston, 180 miles from New York, on the telephone, and told him that he had found the plaintiff, and asked that the case be adjourned one day at least, or until Friday of that week, when he would be ready with the plaintiff and her witnesses for trial of the action at Ballston. The defendant's representative stated that he had entered judgment dismissing the complaint, and refused to open the default, although plaintiff's attorney offered to pay the expenses of the term. Plaintiff's attorney thereupon obtained and served an order to show cause why said default should not be opened. The motion was made as provided by said order, on Friday, January 27, 1902, at said trial term.

The plaintiff did not object to the court imposing such conditions upon her as might seem just and equitable in granting the motion. The affidavits and statements of the plaintiff were practically undisputed. There is no evidence of bad faith on the part of the plaintiff and a trial on the merits could have been had at once. The motion was denied. We think it should have been granted.

Order reversed, and motion to open default granted. No costs on this appeal or on the motion opening the default to either party. All concur.

---

(72 App. Div. 254.)

MATHISON v. NEW YORK CENT. & H. R. R. CO

(Supreme Court, Appellate Division, Third Department. May 7, 1902.)

1. EMPLOYES—EXTRA COMPENSATION—SERVICES OUTSIDE SCOPE OF EMPLOYMENT —IMPLIED AGREEMENT.

An engine dispatcher employed to inspect and repair engines and run engines in case of emergency does not do work so far outside of the scope of his employment as to imply an agreement for extra compensation, when, at his employer's direction, he afterwards runs a switch engine for a few hours each day.

2. SAME.

Even if the running of the switch engine was outside the sphere of the employé's work, the employer would have the right to change the nature of that work, the employé being hired by the month, and after the first month the regular compensation would be deemed to include the extra service.

3. SAME—EXTRA HOURS.

No extra compensation can be recovered by an employé for extra hours required of him by his employer, in the absence of an express agreement.

Appeal from trial term, Columbia county.

Action by Samuel H. Mathison against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff entered on a trial before a referee, defendant appeals. Reversed.

In 1882 the plaintiff was employed by the defendant as engine dispatcher at a station called Chatham upon defendant's road. The duties of such position at the time of his employment were the inspection and repairing of engines and running of engines in cases of emergency. A switch engine was run at this station by another engineer. This continued until about June, 1898. At that time his superior sent him the following letter: "By order of James Buchanan, on and after to-day, Wednesday, June 8, 1898, you will lay up switch engine 61 until further orders. The switching at Chatham is to be done by the regular crews running in there. They will run their regular engines to do the work, but in case you are called on to do some switching you will use engine 61, and you will have to run her. Use one of your shop men to fire for you. Answer how you understand this order." To that the plaintiff replied: "The order to lay up engine 61 reached me last eve. I understand by that order that all trains that come here to do their own switching with their regular engines, and in case 61 is called out to do special work I am to go with her with man out of shop." Under that order the plaintiff ran the switch engine four or five hours each day from June, 1898, until October, 1899, when he left the defendant's employ. This was done in connection with his regular work as engine dispatcher. He had before been an engineer in the defendant's service, and his acquaintance with engines and with this class of work constituted, in part, his qualification for the office of engine dispatcher, which he undertook in 1882. During all that time, and until he left defendant's employ, he received his wages at $105 per month, making no claim at any time for any extra compensation by reason of the additional service required of him in running this switch engine. This action was originally brought upon the theory that during all of this time, both before and after he ran this switch engine, he was required to and did work over 10 hours a day, for which he deemed himself entitled to compensation under chapter 711 of the Laws of 1892. This claim the referee properly disallowed. Thereupon the plaintiff amended his complaint, presenting this claim for compensation for service outside of the sphere of the service for which he had contracted and additional thereto. The referee has allowed him compensation for from four to five hours extra service a day in running this switch engine from June, 1898, to October, 1899. From the judgment entered upon this direction of the referee the defendant has appealed.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and FURSMAN, JJ.

Robert F. Wilkinson, for appellant.

George K. Daley, for respondent.

SMITH, J. I am unable to find any legal justification for the judgment rendered. There are authorities holding that in certain cases where the extra service required is entirely without the sphere of the service for which the contract was made, or where the extra service exacted was such as required special skill or qualifications, in such case the law will imply an agreement for extra compensation. This rule is based upon the probability that for such service there was an intention on the part of the master to pay extra compensation, upon which the servant might rely. But this rule must be cautiously applied, and the service must be so far outside of the sphere of the employment as to indicate a probable intention on the part of the master to allow extra compensation therefor. If the question be one of doubt, the right to extra compensation should rest only

upon an express agreement. Any other rule of law would introduce dangerous uncertainty and instability into all contracts of service. Even the domestic in your household would charge you with a judgment for compensation for extra service, if some further work were required of her than the mistress thought to mention at the hiring. In the case at bar no special qualification was necessary for the extra work required. Plaintiff's experience in running engines upon this road in part qualified him for the service in which he was then engaged. The running of this engine at special times was part of the service explicitly contracted for. An enlargement of that particular service and the requirement to run the switch engine, even four or five hours in the day, was not outside of the sphere and scope of his original employment, and, as matter of law, in my judgment, should be held to be so far within the scope of that employment as to negative an implication of an agreement for extra compensation.

But granting, for the argument, that the running of this switch engine was outside of the sphere or scope of his employment, as held by the referee, I am still of the opinion that the judgment is not justified. Even then the surrounding circumstances may indicate an intention to make the additional service a part of the service for which the wages named in the original contract should compensate. The plaintiff was employed by the month and paid by the month. The defendant has the clear right to discharge him at the end of any month. The defendant might change the nature of that employment, and radically, if he chose. After the expiration of the first month at least the contract must be deemed to include all service required, whether or not it be additional to the service specified upon the original hiring. That this service was intended to be a part of his regular duties for which he was receiving his compensation is to my mind clearly indicated by the very order directing the service. The order reads: "They will run their regular engines to do the work, but in case you are called on to do some switching you will use engine 61, and you will have to run her." That it was so understood by the plaintiff as well as the defendant is clearly indicated by the fact that no claim whatever was made for this extra service for over 16 months, and until plaintiff left the employ of the defendant, and this while receiving monthly his wages from defendant. The case of Smith v. Railroad Co., 102 N. Y. 190, 6 N. E. 397, does not authorize the conclusion of the referee. In that case plaintiff was not in the employ of the defendant, and the performance of service at the request of the defendant was held to imply a promise to repay, and not to be presumptively gratuitous. No express agreement for extra compensation is claimed, and I can see no facts from which an implied agreement can be deduced. The law is well settled that for extra hours of service required by the master no extra compensation can be recovered without an express agreement. By parity of reasoning, for the extra service here required, so intimately connected with his other duties, a recovery of extra compensation can only stand upon an express agreement.

Judgment reversed on law and facts. Referee discharged, and new trial granted, with costs to appellant to abide event. All concur.