(109 App. Div. 211)

COOPER v. BROOKLYN TRUST CO.

(Supreme Court, Appellate Division, Second Department. November 24, 1905.)

1. APPEAL—SUBSEQUENT APPEALS—LAW OF THE CASE.

On appeal from a nonsuit in an action by a servant for additional compensation, the court held that certain facts were some evidence of such services and the value thereof. On a second trial a defense was interposed, and the witnesses cross-examined. *Held*, on a second appeal, the court would examine the whole record, to ascertain if there was evidence to sustain the verdict; being concluded by the former verdict only on the point that plaintiff's evidence, standing alone, presented a question for the jury.

2. MASTER AND SERVANT—WAGES—ACTIONS.

Evidence examined, and *held* insufficient to show the value or extent of additional services rendered by a servant under an alleged contract therefor.

3. SAME.

Where services are rendered by one in the employ of another, even upon request, the presumption is that they were rendered under the contract of employment, unless the contrary is shown.

4. SAME.

In an action by a servant for additional services, evidence examined, and *held* insufficient to overcome the presumption that the services were rendered under the contract of employment.

Appeal from Trial Term, Kings County.

Action by Alfred Cooper against the Brooklyn Trust Company, as executor of Mary F. Raymond, deceased. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and JENKS, HOOKER, RICH, and MILLER, JJ.

William N. Dykman, for appellant.

Thomas Kelby (James W. Ridgway and Frederick L. Taylor, on the brief), for respondent.

MILLER, J. On a former appeal a judgment entered on a nonsuit granted at the close of the plaintiff's case was reversed. Cooper v. Brooklyn Trust Co., 87 App. Div. 610, 84 N. Y. Supp. 88. The defendant now appeals from a judgment entered on a verdict. The plaintiff seeks to recover upon an alleged contract made by the defendant's testatrix, to pay for extra services which he claims were rendered during the time of his regular employment by her as a courier at an annual salary. Upon the part of the plaintiff, it appeared that the deceased was in the habit of traveling in Europe; that some time in 1894 he was in her service as a courier for about seven months, having been engaged to her by "Cook's," with whom he was regularly employed; that in August, 1894, he left the employment of "Cook's," and engaged directly with her as a courier, in which capacity he served a period of 13 months, until September, 1895; and that he was likewise employed on two subsequent trips, one from November, 1895, to April, 1896, and the last from May 12, 1896, to February 25, 1897, at which time she died at Genoa. There is no evidence to show specifically the nature of a courier's duties, but it appears from the plaintiff's witness that upon the first trip, while he was still in the employ of "Cook's," he bought the tickets, paid the hotel bills, "and did all the services that were necessary, and got the cabs." This witness also testified, speaking of the second trip:

"I have heard conversation between him and Mrs. Raymond as to compensation that he was to receive. He always asked her what compensation she would make him, and she always said she would provide for him. * * * He was with us constantly during that trip, and he bought the railroad tickets, attended to the transportation, paid the hotel bills, looked after the carriages, and did all that work for us. * * * She was in delicate health, and Mr. Cooper would go for the doctors, and do everything he could, and attend to the medicines. He rendered services at night for her. If it were necessary, he went for the doctor at night, and got her medicine, and got up and waited on her when it was necessary. He took entire charge of her money matters and paid her bills. * * * He said he would lose his position, and she said she was able to pay him if he did lose it, and that she was also willing. She did say to him, 'I am able to remunerate you.' That was always what she said: 'I am well able to pay you for any loss you may sustain by being with me.'"

She also testified to a conversation with the deceased in October, 1895, as follows:

"Mrs. Raymond said she was over to the Safe-Deposit Company in Brooklyn a couple of days before, and that she deposited bonds for Cooper, to be given to him after her death. She also said that he was always asking her about them, and of course she had to keep her promise."

It also appeared upon the plaintiff's showing that upon the death of said testatrix her executor found in a box in the Safe-Deposit Company an envelope containing bonds of the par value of $6,000, and that on the face of the envelope the following was written in the handwriting of the deceased:

"To be delivered to Alfred Cooper, of Thomas Cook & Sons, of Paris. October 7th, 1895.
                         "Brooklyn Trust Company.

"To be delivered to owner, as per memorandum within. This is private, and for those addressed.                                M. F. Raymond."

Upon a record containing substantially the same evidence as above outlined, this court held that there was evidence of the rendition of services by the plaintiff outside of his duties as courier, and of a promise by the testatrix to pay therefor, and that the deposit of the bonds was some evidence in the nature of an admission of the value of the services. This decision, so far as the record now before us presents the same question, should be respected. However, upon the trial now being reviewed, the plaintiff's witness, by whom the contract and the performance of the services were sought to be established, was cross-examined, and a defense was interposed, and we therefore must examine. the entire record, to ascertain whether, upon the whole case, there is sufficient evidence to sustain the verdict; being concluded. by the former decision only upon the point that the plaintiff's evidence, standing alone and unexplained, presented a question for the jury.

On cross-examination the plaintiff's witness testified:

"Mrs. Raymond spoke no foreign language—neither German nor Spanish. She said he was continually reminding her of her promise. I testified at the last trial that he was always telling her how much he had done for her. I very very often heard him tell her that he was doing a lot for her; I could not repeat the number of times. No; he was not continually nagging her. He would say he was doing a great deal. and he was a very good friend to her, and she used to say, 'Yes, old boy; I know that, and I will reward you.' He told her he had lost his place. I heard him say that about three times I should think. * * * The second trip began in August, 1894, and ended in September, 1895, and it was during the second trip that I heard him remind her that he was doing a lot for her. I cannot just remember when he first told her that he had lost his position, and that he was doing a lot for her. I could not remember whether it was August; 1894, or September. * * * I often heard him say himself that he had left Cook's to come to her. I could not tell you when, but I heard it. I heard it on three or four occasions. We spoke generally about it. * * * Between November, 1895, and April, 1896, I heard Cooper again remind her of how much he had done. He would remind her in a general way, and say, 'Mary, I have done a great deal for you,' or something like that. I did not ever see her pay him between November, 1895, and April, 1896. I never saw her pay him. I saw her giving him money to pay bills, and I saw him drawing money out of the bank to pay bills, but I never saw her paying him money. I don't know that he was ever paid wages. He may have got the money. I know that he got money, but I could not say that he ever got wages. I might have said to-day that I supposed he might have made $7,000 during the European trip."

It also appeared on the part of the defense that the box in which the envelope containing the bonds was found was rented by the deceased; that in November, 1895, a month after placing it in the box, she broke the seal, took out and destroyed the memorandum referred

to by the writing on the face of the envelope, and took out three $1,000 bonds, which she pledged as security for a loan; and that she said at the time: "What a fool I would be to want money with these bonds here.   He [referring to the plaintiff] has been well paid."   It also appeared without dispute that the plaintiff's salary was $800 per year; that after the death of the decedent he wrote a letter to the American Consul at Genoa, containing this statement viz.:

"It was a usual thing for the past five years that I have traveled as courier for Madam while she remained in Europe, at the end of our trips, or as she was leaving for home, she paid me in full for services rendered since trip began.   In this case Mrs. Raymond was taken ill so suddenly—I mean her death sickness—that my salary from May 12, 1896, until February 25, 1897, remains unpaid, and I herewith render my account."

—And that he obtained through said Consul payment in full of the account so rendered and executed, a receipt in full for all services rendered as courier, and thereafter wrote a letter to the defendant containing the following statement:

"I have reason to believe that my name has been mentioned in her last will, as Mrs. Raymond has always shown to me great kindness, and had promised to remember me in her generosity for the good cares I used to take for her comfort."

Thereafter the plaintiff brought an action to recover the six bonds remaining in the envelope referred to, on the theory of a gift causa mortis, and, failing in said action, this suit was brought for extra services, on the theory that the deposit of the bonds was an admission of the value of the services.   There is this difference between the plaintiff's evidence concerning the depositing of the bonds on this and the first trial: on the first trial his witness testified that the deceased said "she had been to the Brooklyn Safe-Deposit Company, and left an envelope with the bonds in for Mr. Cooper, to remunerate him for his time and services to her"; on this trial she testified that the deceased said "that he was always asking her about them, and, of course, she had to keep her promise."   The court limited the recovery to extra services performed during the second and third trips of Europe, viz., to the trip of thirteen months just prior to the deposit of the bonds and to the trip of about 5 months immediately following.

There is not a scintilla of evidence from which the jury could find the extent or value of the so-called "extra services," unless the deposit of the bonds was sufficient evidence thereof.   Whatever probative force that fact might be entitled to, as presented by the record on the former appeal, as now explained by the record before us, it is clear that it is entitled to no weight whatever.   Instead of putting bonds worth $6,000 out of her possession, with the declaration that she did it to remunerate the plaintiff for services, it now appears that she first deposited nine $1,000 bonds in her own box in an envelope, with a memorandum containing directions, saying that it was done, not as remuneration for services, but to keep a promise, and that immediately thereafter she repented her generosity, and destroyed the memorandum, making the statement that the plaintiff had been well paid.   Certainly, her act could not be an admission of the value of services yet to be performed.   If entitled to any force as an admission, it must have related

solely to the value of the extra services performed from August, 1894, to September, 1895, and in fact the only testimony in the case of the rendition of any extra services related to this trip. If an admission, therefore, it was an admission that the extra services (assuming they were such) of this $800 courier in going after a doctor, getting medicine, getting up and waiting on her when necessary, and taking charge of her money matters and paying her bills during 13 months were worth $9,000. But aside from this defect in his case, which in my judgment is fatal, the plaintiff has utterly failed to sustain the onus of proving the contract upon which he relies. It is well settled that where services are rendered by one in the employ of another, even upon request, the presumption is that they were rendered under the contract of employment, unless the contrary is shown. Ross v. Hardin, 79 N. Y. 84. Has the plaintiff sustained the burden of showing that such acts of kindness as he has been able to prove were performed by him pursuant to a contract to pay therefor, or were they performed for the purpose of ingratiating himself with the deceased, relying wholly upon her generosity for his reward? Was the promise made by deceased a promise to pay the value of services rendered upon the faith of such promise, or was it merely a voluntary promise to reward a faithful servant? The testimony of the sole witness relied upon to establish the contract, in the light of her cross-examination, utterly fails to establish an enforceable contract. According to this witness, the plaintiff was constantly reminding the deceased how much he was doing for her, and that he had lost his former place, and she as constantly promised to reward him. Concededly, the loss of the place, which he left to enter her service, furnished no consideration for the promise, and the court so charged. The entire testimony of this witness tends to establish a voluntary promise on the part of the decedent to reward the plaintiff for past kindness and loss of place, which he constantly kept before her, to stimulate her generosity; at least, this theory is more consistent with the testimony than any other. Hence it is not sufficient to overcome the presumption with which the plaintiff's case is burdened, and, without any presumption against him, the plaintiff must fail, if his evidence is just as consistent with a theory upon which he is not entitled to recover, as it is with the theory upon which he may recover, because a jury cannot be permitted to guess which of two possible theories is correct. Laidlaw v. Sage, 158 N. Y. 73, 52 N. E. 679, 44 L. R. A. 216; Searles v. Manhattan R. Co., 101 N. Y. 661, 5 N. E. 66; Taylor v. City of Yonkers, 105 N. Y. 202, 11 N. E. 642, 59 Am. Rep. 492.

The impression created by the plaintiff's evidence becomes conviction when we consider the evidence of the defendant showing the conduct and admissions of the plaintiff after the decedent's death, and it is therefore clear that upon the whole case the plaintiff has failed to sustain the onus of proving his cause of action. Claims of this character against the estates of deceased persons naturally excite our suspicion, and it is not requiring too much to insist that the plaintiff prove his case.

I advise a reversal of the judgment and order and the granting of a new trial; costs to abide the event. All concur.