HARRY WATCHAM, Appellant, v. INSIDE INN COMPANY, Respondent.

St. Louis Court of Appeals, July 15, 1911.

1. **MASTER AND SERVANT: Employment: Contract Construed.** A recital in a letter, employing one as assistant hotel manager, that while the writer would retain the general management, he expected to delegate to the assistant the usual duties of manager and the employment of a large part of the help, did not require the assistant to perform all the duties of manager, without extra compensation, on the manager becoming incapacitated.

2. ————:————: **Extra Services: Right of Recovery: Quantum Meruit.** An assistant hotel manager can recover on *quantum meruit* for extra services rendered on the manager becoming incapacitated, which were of the same general character as those he was employed to render, only by showing, either that the employer expressly agreed to compensate him, or that the extra services rendered were of such a character and were performed under such circumstances that a reasonable person in the same situation as the employer ought to have known that additional compensation was expected.

3. ————:————:————:————:————: **Sufficiency of Evidence.** In an action on *quantum meruit* by an assistant hotel manager for extra services rendered on the manager becoming incapacitated, which were of the same general character as those he was employed to render, evidence *held* sufficient to warrant

submission to the jury of the questions, whether defendant made an express contract to pay plaintiff additional compensation, and whether the extra services were of such a character and were performed under such circumstances that a reasonable person in the same situation as defendant ought to have known that additional compensation would be expected.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey,* Judge.

REVERSED AND REMANDED.

*David Goldsmith* and *Sale & Sale* for appellant.

(1)    There is, as a matter of law, a difference between the office of manager of a hotel and that which the plaintiff originally contracted to fill. Wheeler, etc., Co. v. Lawson, 57 Wis. 404; Oro, etc., Co. v. Kaiser, 4 Colo. App. 224; Kansas City v. Cullinane, 66 Kansas, 77; Taylor v. Assn., 136 N. Y. 46. (2)    An assistant is one who stands by and helps or aids another. State ex rel. v. Longfellow, 95 Mo. App. 667; United States v. Adams, Fed. Rep. 351. (3)    If the plaintiff was asked to perform duties which were outside the scope of his original employment, that request, without more, carried with it an implied agreement to pay reasonable compensation for the performance of those duties. Bradner v. Powder Co., 115 Mo. App. 102; Kleb v. Wallach, 39 N. Y. Supp. 654; Wilson v. Godkin, 136 Mich. 106; Kennedy v. Iron Works, 91 Mich. 500; Dull v. Bramhall, 49 Ill. 364.

*Nathan Frank* and *Richard A. Jones* for respondent.

All the services rendered by appellant were presumed to be those contemplated by his contract of employment, and if he claimed to the contrary, the burden of proof was upon him to establish by a pre-

ponderance of the evidence, a subsequent mutual agreement between him and respondent for the modification of the original contract, and for the payment of an increased compensation.

The evidence fails to establish any such subsequent contract, and the action of the trial court in instructing the jury to return a verdict in favor of respondent was proper. Insurance Co. v. Goodrich, 74 Mo. App. 355; Leach v. Railroad, 86 Mo. 27.

NORTONI, J.—This is a suit on *quantum meruit* for the reasonable value of services rendered by plaintiff as manager of defendant's hotel. At the conclusion of the evidence on the part of the plaintiff, the court peremptorily directed a verdict for defendant and plaintiff prosecutes the appeal.

The present suit was filed in the month of May, 1905, but the case was continued from time to time in the circuit court until but recently when the trial was had, with the result stated. During the year 1904, the Louisiana Purchase Exposition Company conducted what is known as the World's Fair at St. Louis, and defendant hotel company had a concession from it which permitted the operation of the hotel known as the Inside Inn within the fair grounds. Defendant's hotel was a very large one and contained 2360 rooms. In and about it, there were employed from 800 to 1000 persons and it entertained as many as 3800 guests at one time. Though it was but a temporary frame structure erected for World's Fair purposes, it was a high class institution in point of fare and service, and enjoyed a very great patronage. Indeed, it is said that its gross receipts during the seven months of the World's Fair were $1,400,000. Defendant hotel company was under the management of Mr. E. M. Statler, its president, who employed plaintiff for the season as assistant manager of the hotel at a salary of $200 per month. The World's

Fair opened May 1, 1904, and it appears that on the evening before, April 30th, Mr. Statler, the president and manager of defendant, suffered an injury through being scalded by the explosion of a hot water tank and was therefore removed to a hospital. Mr. Statler remained in the hospital for from six weeks to two months, and returned to the hotel for about two weeks, after which he was again placed in the hospital for some time. He finally recovered sufficiently to return to the hotel, probably about the first of August, and there remained during the summer, but was unable to perform any of the duties as manager. Indeed, his condition was such that he could be moved around only in an invalid chair until the hotel closed the first of December. While Mr. Statler was in this condition, the entire management of the hotel was cast upon plaintiff and he sues for compensation as manager, averring that defendant agreed he should be reasonably compensated as manager.

The trial court obviously directed a verdict for defendant on the theory that the duties of manager which he performed were within the contract of plaintiff's original employment as assistant manager, for in no other view can the judgment be sustained. The entire contract by which plaintiff was originally employed is to be found in certain telegrams and a letter. While plaintiff was employed at the Garden Hotel, at Atlantic City, New Jersey, Mr. Statler, defendant's president, telegraphed him March 21, 1904, as follows:

"Do you feel capable and willing to act as one of my assistant managers at your present salary; answer."

Plaintiff immediately replied thereto by wire as follows:

"Perfectly willing and hope to prove capable in position named under your direction. Understand salary is to be two hundred dollars per month. Big

Easter season coming on, and cannot be with you until April fifth or tenth. Please answer fully by letter. Many thanks for your offer."

To this telegram defendant's president, Mr. Statler, answered forthwith by wire as follows:

"Your understanding of offer correct; letter follows."

On the same date as that borne by the last telegram quoted, March 22, 1904, Mr. Statler, defendant's president, wrote plaintiff the following letter, which sets forth all three of the telegrams and constitutes the original contract of employment between the parties:

"St. Louis, March 22nd, 1904.
"Mr. Harry Watcham,
Garden Hotel, Atlantic City, N. J.

"Dear Sir:—We wired you, on Saturday, as follows: 'Do you feel capable and willing to act as one of my assistant managers at your present salary? Answer.' We have your telegram in reply, saying: 'Perfectly willing and hope able to prove capable in position named under your direction. Understand salary is to be two hundred dollars per month. Big Easter season coming on. Cannot be with you until April 5th or 10th. Please answer fully by letter. Many thanks for your offer.' To this, we wired you in reply: 'Your understanding of offer correct. Letter follows,' all of which we beg to confirm.

"On your telegram, we will consider the position of an assistant to myself in the management of the hotel closed, and, while we do not wish to inconvenience you in any way, we believe that it will be best for you, for me and for the hotel, that you should come on at as early a date as you can. Your salary to be $200 per month.

"While I expect to maintain the general management of the house, I expect to delegate to you, as my assistant, the usual duties of manager, and shall ex-

pect to leave to your judgment the employing of a large part of the help of the hotel. Looking to this end, then, I would add that we had a room clerk under consideration when we decided to make you the above offer as assistant manager. On receipt of your acceptance of the position offered, it has occurred to us that you might have a room clerk in your mind that you could thoroughly recommend, as to experience, ability, and whom you would like to have work in that position under your management. If you have such a man in your mind, and can thoroughly recommend him yourself, we shall be glad to have him communicate with us in regard to the position.

"We might add that we have one room clerk engaged, and would not decide at the outset, whether any one else coming in would be the chief, or work on an equal basis with the one already engaged. There is no doubt but that the position of chief room clerk at 'The Inside Inn' needs a man of pronounced ability in his line. It might, possibly, be advisable to have two men work on an equal basis, the one eventually taking the place of chief who shows himself best fitted to fill it.

"We are sending, for your information, the booklet advertising the hotel, which you have undoubtedly already seen; ground plan of the Fair, picture of the hotel made from the architect's drawings, and another print taken from a water color. We hope you will have all this advertising learned by heart by the time you are ready to come to us. If the proof of the floor plans, now in the hands of the printer, arrives this afternoon, as we hope it will, we will enclose that also. We attach a sheet showing the suites of rooms with private bath attached.

"We are sending you, under separate cover, 25 booklets, like the enclosed, as we think you may do us some good among the people in your hotel before you leave. Of course we hope to have all our em-

ployees who are with us in important positions use their personal influence to have their friends and acquaintances register at 'The Inside Inn.'

"Trusting that the business arrangement entered into between yourself and this company may be a satisfactory one for both sides, we remain,

Yours very truly,

THE INSIDE INN CO.,

By E. M. Statler, President."

Plaintiff came to St. Louis about the 9th of April, and immediately undertook the discharge of his duties as assistant manager of the hotel under Mr. Statler, in which capacity he continued until Mr. Statler was injured on April 30th. Immediately thereafter, on May 1st, by direction of Mr. Hayes, treasurer of defendant and trustee for the bondholders, plaintiff assumed the duties of manager of the hotel, and the evidence is quite conclusive to the effect that he discharged them for the full term the hotel was open, or until December 1, 1904. Among other things, the letter from Mr. Statler to plaintiff above quoted, recites, "While I expect to maintain the general management of the house, I expect to delegate to you, as my assistant, the usual duties of manager and shall expect to leave to your judgment the employing of a large part of the help of the hotel." On this recital in the letter, defendant relies and insists that though plaintiff was employed as assistant manager the contract stipulated he was to perform the duties of manager as well for the same compensation. We are not so persuaded, for it does not recite that plaintiff was to assume all of the duties of the manager, but, on the contrary, implies he was to perform part of them only. The very portion of the letter relied upon by defendant says that Mr. Statler expected to maintain the general management of the house and, while he expected to delegate to plaintiff as his assistant the usual duties of manager and the employment of a part of the

help, nothing therein suggests that all of these duties were to be cast upon him. Indeed, the language quoted suggests the contrary, for besides saying that Mr. Statler would maintain the general management of the house, the statement that plaintiff would employ a part of the help of the hotel implies that general supervision and power in that behalf would be retained by Mr. Statler. That the contract of employment evinced by this letter was one of assistant manager instead of manager is as clear as simple English words can reveal it, for over and over again, this statement is made. And furthermore, Mr. Statler says therein that "I expect to maintain the general management of the house." But though such be true, as the services rendered by plaintiff after the incapacity of Mr. Statler were of the same general character as those for which he was employed, the law presumes they were rendered for the same compensation as that agreed upon. as assistant manager, and before plaintiff is entitled to recover it devolves upon him to prove either that defendant expressly agreed to compensate him as manager or that the services rendered by him were of such a character and were performed under such circumstances that a reasonable man in the same situation as defendant ought to understand and know that compensation would be expected therefor. Plaintiff may recover in this suit on *quantum meruit* upon satisfying the jury, either of an express agreement to reasonably compensate him for his services as manager in addition to the position of assistant manager, as in the case of a new contract of employment, or that the additional services that he rendered because of the incapacity of Mr. Statler were of such character and rendered under such circumstances as to suggest to defendant as a reasonable person that it would be expected to make additional compensation therefor. Such we understand to be the rule of law on the facts

of the case as they appear in the record, and it is unnecessary to elaborate it. [Sawyer v. Pawners' Bank, 6 Allen (Mass.) 207; Fitzgerald, etc., Co. v. Fitzgerald, 137 U. S. 98; Pew v. First Nat'l Bank of Gloucester, 130 Mass. 391; Wagner v. Edison Elect. Co., 141 Mo. App. 51, 121 S. W. 329; Taussig v. Railroad, 166 Mo. 28, 65 S. W. 969.]

Defendant corporation is and was at the time controlled by a board of directors consisting of three persons, Mr. Statler, the president, Mr. Hayes, the treasurer, and Mr. Kellogg, its secretary. There was no vice-president. By a contract between defendant corporation and the bondholders, who financed the venture, it appears to have been provided that full and complete authority as to the management and conduct of the corporation was conferred upon Mr. Hayes, its treasurer, in the event Mr. Statler should become disabled from any means. Besides being treasurer of the corporation, Mr. Hayes, under this contract, was also trustee for the bondholders and had complete charge of the financial affairs of the company. Plaintiff testified that, immediately after Mr. Statler became incapacitated, Mr. Hayes, the treasurer, who succeeded to full control, instructed him to take charge of the hotel as manager and telegraphed Mr. Kellogg, the other director, to this effect and he consented thereto. Plaintiff testified, too, that a few days thereafter both Mr. Hayes and Mr. Kellogg came into his office at the hotel and Mr. Kellogg stated in the presence of Mr. Hayes that they were highly satisfied with his conduct of the hotel and that he had *carte blanche* to do the best he could with it and stated furthermore that they would take care of him. It further appears from both the testimony of plaintiff and Mr. Hayes, the treasurer and trustee for the bondholders, that all of the heads of the departments were called together immediately after Mr. Statler's misfortune and instructed by Mr. Hayes to look to

plaintiff as the manager. Besides, the proof is quite convincing that plaintiff performed all of the duties of manager and was so regarded by Mr. Statler, the president. This testimony that the hotel company "would take care of plaintiff," and the conduct of the officers thereafter, certainly suggests an express agreement to pay plaintiff reasonable compensation for his services as manager of the hotel, and it should have been referred to the jury for its finding thereon. Besides this, the facts and circumstances of the case suggest that the incapacity of Mr. Statler devolved upon plaintiff most onerous duties in addition to those of assistant manager for which he was employed. Indeed, so much that even Mr. Hayes admits he suggested plaintiff employ an assistant, as he feared he might break down under the strain. In view of this showing, the court should have submitted as well the question as to whether or not the character of the additional duties devolved upon plaintiff and the circumstances under which such additional services were rendered made it fairly presumable that defendant, as a reasonable person, should have expected to pay, and that plaintiff expected to charge, the reasonable value of the service therefor. The judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.