P. H. McGUIRE, Appellant, v. INTERURBAN RAILWAY COMPANY, Appellee.

**MASTER AND SERVANT:** Services and Compensation—Dual Compensation. An employee who, on commencing work, is appointed to a position which is higher and more responsible than a subordinate position formerly agreed upon, but which embraced responsibility for the performance of the duties of such subordinate position, may not, after accepting compensation for the higher position, also recover compensation for the subordinate position, in the absence of any justifiable showing of expectation on his part to receive, and on the part of the employer to pay, such dual compensation.

**MASTER AND SERVANT:** Extra Compensation—Recovery Under
Custom or Implied Agreement. Extra compensation for services
performed in excess of eight hours per day, and on Sundays and
other holidays, even though such services are within the scope of
the employee's general employment, may be recovered on a showing:

1. That a general, uniform, and notorious custom existed in the
business in question to pay such extra compensation, and that the
contract for services was entered into with reference to said cus-
tom; or

2. That, in view of the attendant circumstances, the extra serv-
ices were rendered in the reasonable and justifiable understanding on
the part of the employee that he would receive, and on the part
of the employer that he would pay, such extra compensation.

**TRIAL:** Reception of Evidence—Questions Not Revealing Expected
Answer. Principle reaffirmed that the exclusion of questions which
do not reveal the answer expected presents no reversible error.

**PAYMENT:** Receipts—Parol Explanation. Salary checks "in full of
all salary to date" create a presumption of full payment, but are
subject to parol explanation as to their purpose and the intent of
the parties.

**ACCORD AND SATISFACTION:** Payment—Effect. The cashing of a
check for ordinary salary will not constitute an accord and satis-
faction of a claim for extra compensation when the parties did not
so intend; nor will the payment for overtime on one occasion defeat
a claim for extra compensation on another occasion unless the parties
so intend.

Headnote 1.   26 Cyc. p. 1037.   Headnote 2.   26 Cyc. pp. 1036, 1037.
Headnote 3.   4 C. J. p. 914.   Headnote 4.   1 C. J. p. 524; 30 Cyc. p. 1225.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

SEPTEMBER 26, 1924.

REHEARING DENIED JANUARY 16, 1925.

ACTION to recover for services alleged to be in addition to
the admitted employment of plaintiff, and for overtime. A ver-
dict for defendant was directed at the close of plaintiff's evi-
dence, and from the judgment thereon against him, plaintiff
appeals.—*Reversed and remanded.*

*A. D. Pugh,* for appellant.

*W. H. McHenry* and *Corwin R. Bennett,* for appellee.

Vermilion, J.—The appellant brought this action to recover for services alleged to have been rendered to the appellee.

There are certain facts about which there is no dispute. Camp Dodge, a large military training camp used by the United States government during and for some time after the close of the late war, was situated on appellee's line of interurban railway. From the time of the location by the government of the camp at that site, up to the end of the period covered by the present claim, appellant was in the employ of the appellee as general agent at Camp Dodge, and during a considerable portion of the time was also designated and addressed as superintendent of terminals. He was paid and received a stipulated salary for his services in these capacities.

1. MASTER AND SERVANT: services and compensation: dual compensation.

It is the claim of appellant, as gathered from his petition, that, in addition to the services performed as general agent and superintendent of terminals, he was, on July 1, 1917, employed by appellee as local agent at Camp Dodge station, at a salary, to start with, of $125 per month, and continued in such employment to August 1, 1921; and he claims the reasonable value of services so rendered, in the sum of $10,007.50. He further claims that, at the request of appellee's general manager, he performed the duties of local agent at Johnston Station for two months, and that the reasonable value of such services was $125 per month. On this account he claims $250. He also claims that, during the time of his employment, he worked in excess of eight hours per day, and on Sundays and legal holidays, and for this alleged overtime he claims $2,355.64. He admits that he was paid by the appellee $40 for overtime.

The answer, in addition to a general denial, admits that, during the time in question, appellant was in the employ of appellee, and alleges that he has been fully paid for all services performed by him, and pleads an accord and satisfaction, based on appellant's acceptance twice a month, during his employment, of checks in payment of his salary.

At the close of appellant's evidence, the trial court, on mo-

tion of appellee, directed a verdict in its favor. This ruling presents the principal matter for contention in this court.

In addition to the foregoing, appellant's evidence tended to show, and hence, in the present situation, must be taken as establishing, the following facts. Shortly before the government located the training camp in question, appellee's general manager told appellant that, if the camp was located there, the company would need a local agent at Camp Dodge, and that he would like to have appellant for the job. On Saturday, June 30, 1917, after the camp had been located, he told appellant that the salary would be $125, to start with, and asked him to go out the next day and look over the situation, and see what was needed. This the appellant did; and on Monday, July 2, 1917, he started to work. On the last named date, appellee issued a circular, signed by its superintendent of transportation, stating that appellant had been appointed general agent at Camp Dodge, and that he would have complete charge of the terminal known as Camp Dodge district, and charge of all work done in that territory, and that all men "would work under his direction, relative to the handling of cars," etc. This order came to appellant's knowledge within a few days, and he was also advised by the general manager that he was to be appointed general agent. By a like order, dated January 15, 1918, all employees were advised that:

"The management has this date requested Mr. P. H. McGuire, general agent at Camp Dodge, to assume, in addition to his former duties, the general overseeing of all the interests at Camp Dodge, including Herrold and down to and including Johnston Station. Mr. A. S. Clemons, station master, will act as Mr. McGuire's assistant, and will have charge of the passenger stations within the camp reservation, including Herrold, and should be consulted in all matters concerning their detailed operation."

Appellant had numerous other assistants; but the exact number or when they were employed is not shown, save that at one time he had a cashier, chief clerk, car clerk, and three other clerks in the freight office. He had charge of all ticket offices within his territory. Appellant testified that he did part of the work himself; that it was impossible for one man to do

it all. He defined the duties of a local agent as consisting of accounting for all freight received; collecting and remitting charges; looking after the office force; keeping the records of receipts and the forwarding freight cars, damages and shortages of freight; correspondence; collecting and remitting demurrage charges; making out monthly reports, abstracts, and balance sheets and all reports that were required. The duties of a general agent, as distinguished from those of a local agent, he defined as looking after the company's interests as they developed, the looking after claims, such as maintenance claims and transportation claims, and arranging passenger equipment. He testified that it was necessary to watch the train service, to see that the right number of coaches were in the trains; and that, as general agent, he was over Johnston Station, Camp Dodge ticket office, Arsenal ticket office, and Herrold freight and passenger stations; and that these were not duties of the local agent at Camp Dodge freight station. The appellant made out the pay rolls for the force under him, and for himself as well. The first pay roll after his employment was made out on July 15, 1917, and therein he designated himself as general agent. He continued to so designate himself in the pay rolls until his appointment as superintendent of terminals, after which he gave his title as superintendent of terminals and general agent. The salary paid him at the beginning of his employment was $125 per month, and it was increased, from time to time, until he was receiving $210 per month. His salary was paid twice a month, by checks bearing on their face the words: "For all services rendered up to and including above date." During a good portion of the period of his employment, he was paid $25 per month in addition to his salary. These latter amounts did not appear upon the pay rolls at all, and appear to have been to apply on his expenses. The pay rolls made out by appellant contained no reference to his alleged employment as local agent at Camp Dodge, and no mention of overtime for him, although they showed overtime for certain employees under him.

Taking up first appellant's claim to recover for alleged services as local agent at Camp Dodge and Johnston stations, we think it is entirely clear that, on the uncontroverted facts, he is not entitled to recover, and that the action of the lower court

in so directing the jury was plainly right. His theory seems to be that he was orally employed as local agent at Camp Dodge, and that, notwithstanding the fact that, on the day he went to work for appellee, he was appointed general agent, he was never relieved as local agent, and that, while continuing to hold the position of general agent, for which he was paid the full salary contemplated by his employment, he was, during all that time, local agent also, and entitled to a salary as such.

The general situation was doubtless without parallel. The appellee was confronted with the problem of handling the freight and passenger business incident to the hurried construction and efficient operation of a great training camp for thousands of newly enrolled soldiers. Appellant was offered the position of local agent, and within two days, and on the very day he went to work, was appointed as general agent. That this was due to the quick realization of the magnitude of the task and the necessity of having one with adequate authority in charge cannot be doubted. The obvious distinction between the two positions, and the one most apparent from appellant's own description of the duties pertaining to each, is that the latter was one of greater authority and responsibility, of higher and supervisory rank over the former. The general agent was responsible for the proper performance of duties pertaining strictly to a local agent. That appellant himself, or through his assistants, performed the duties of local agent, is not open to question; but that fact is far from conclusive, for, as general agent, it was his duty to see that they were performed. That appellant himself so considered it at the time is clear. In the first pay roll made out by him, showing the salary due himself and his subordinates, he described himself as general agent, and drew the salary agreed upon at the time of his employment. It does not appear when he was first given assistance; and it may be that, at the beginning, the work actually performed by him personally was largely that required of a local agent. However the situation is regarded, by whichever name known, it is certain that the position originated with his appointment, and that the consequent duties began from nothing, and grew in magnitude, importance, and responsibility in unprecedented fashion. The first office at Camp Dodge was in a small tent, and later, it is

said by counsel, the business done amounted to millions of dollars. Large or small, it was under the direction and supervision of appellant as general agent, and that relation of necessity included the duty of seeing that work of the character required of a local freight agent was performed. There is not the slightest basis in the record for concluding that appellee, or its managing officers, considered that appellant was in its employ in two entirely distinct capacities: one as a mere local agent, with limited authority, and duties largely of a routine and clerical character; and the other in the general direction and management of its business within a certain territory, and with authority over other employees, including himself in the subordinate capacity. Nor do we think there is anything in the record from which it could be found, in view of all the circumstances, that appellant at the time regarded himself as occupying such an anomalous situation, or then expected to be paid a salary for both positions. The fact that, in the original conversation with appellee's general manager, the position was referred to as that of local agent, and that there was no formal order relieving him of the duties of agent, is of no controlling significance, in view of the fact that his formal appointment on the day his services commenced was as general agent, and the latter was a position of higher rank and greater authority, the duties of which included those of local agent, and that appellant accepted the appointment, and himself made out the pay rolls upon which he was paid as general agent, and accepted the salary paid him as such, and made no claim at the time to be entitled to another salary as local agent. Under such circumstances, there was no contract or agreement, express or implied, that he was employed in two separate and distinct capacities, and was to be paid for his services in both. The question is one of fact; but the conclusion reached is in harmony with decisions of this and other courts on similar facts. *Trautman v. Traub,* 150 Iowa 23; *Weymer v. Belle Plaine Broom Co.,* 151 Iowa 541; *Forster v. Green,* 111 Mich. 264 (69 N. W. 647); *Pittsburg, C. C. & St. L. R. Co. v. Baker,* 73 Ind. App. 332 (125 N. E. 233); *Robinette v. Hubbard Coal Min. Co.,* 88 W. Va. 514 (107 S. E. 285, 25 A. L. R. 212); *Pittsburg, C. C. & St. L. R. Co. v. Marable,* 189 Ind. 278 (126 N. E. 849). In the case last cited, it is said:

"In a case of this kind it is not sufficient to establish merely that services outside of the ordinary employment were requested by the employer and performed by the employee. The plaintiff must go further, and prove that the services requested were of such a character and were rendered under such circumstances as would lead to the conclusion that a servant performing such services would be reasonably justified in the belief that he would be allowed additional compensation therefor, and that an employer making such request would be reasonably expected to know that additional compensation would be expected. In other words, the character of the work requested and the circumstances attending the request and performance must be shown to be of such a nature as to justify the inference that extra compensation was contemplated by both employer and the employee."

What has been said applies more particularly to appellant's claim to recover for services as local agent at Camp Dodge, but is, in principle, applicable also to his claim for salary as agent at Johnston station. The latter service he claims to have performed, as we understand, under the authority of the circular of January 15, 1918, quoted above, wherein he was requested to assume, in addition to his former duties, the general overseeing of all the interests at Camp Dodge, including Herrold and Johnston stations, and in connection with a temporary increase of business at Johnston, due to paving operations in that vicinity. He might, it would seem, with equal consistency, claim a separate salary as superintendent of terminals; but he apparently concedes that his services in the latter capacity, while rendered under the same authority and direction, were paid for by the one salary he received. His present claim that, during all the time of his employment, he filled two separate and distinct positions, and was entitled to the full monthly salary pertaining to each, and that, during part of the time, he filled three such separate positions, and was entitled to three salaries, was not made until after he left the employ of appellee. The very extravagance of the latter claim emphasizes the unreasonableness of both.

The right to recover extra compensation for work done in excess of eight hours per day and on Sundays and legal holidays must depend on contract, express or implied. While there is

2. MASTER AND
SERVANT: extra
compensation:
recovery under
custom or im-
plied agreement.

some lack of uniformity in the results reached in the different cases where such a situation is considered, and it would be difficult, if not impossible, to harmonize all of the decisions on the subject, the principles involved are generally recognized, and what confusion there is arises more often from their application than from any fundamental difference of opinion as to the law.

There is authority for the proposition that no recovery can be had for such extra services, except upon an express promise to pay; that there is a presumption of law that all services rendered by an employee during the period for which he is employed, of a nature similar to those required of him in the course of his regular duties, are paid for by his stipulated salary or wages; and that to overcome this presumption he must show an express promise for extra compensation. *Bell v. Drummond,* Peake's Nisi Prius Cases 45; *McGregor v. Harm,* 19 N. D. 599 (125 N. W. 885, 30 L. R. A. [N. S.] 649, and note); *Heywood v. Doherty,* 121 N. Y. Supp. 610. In *Gutweiler v. Lundquist,* 200 Mo. App. 526 (207 S. W. 838), it was recognized that, under extraordinary circumstances, a contract to pay extra compensation may be inferred from all the facts and circumstances.

According to the weight of authority and the rule heretofore adopted by this court, however, a recovery may be had for extra services, even when of a character to come within the scope of the employment, upon proof of facts short of an express promise to pay therefor, but from which such a promise may be implied.

That no implied promise to pay for extra services within the scope of the servant's employment will arise from the mere performance of the service at the request of the employer,—as would be true in the case of strangers, between whom the relation of master and servant did not already exist,—is clear, both on principle and authority. In other words, the mere performance of extra services at the request of the employer, so long as they are of the character required of him by his employment, will not alone be sufficient to overcome the presumption that they were rendered under the existing employment, and to be paid for by the regular compensation. *Ross v. Hardin,* 79 N. Y. 84; *Mathison v. New York, C. & H. R. Co.,* 72 App. Div. 254 (76 N. Y. Supp. 89); *Cooper v. Brooklyn Trust Co.,* 109 App.

Div. 211 (96 N. Y. Supp. 56); *Houghton v. Kittleman,* 7 Kan. App. 207 (52 Pac. 898); *Levi v. Reid,* 91 Ill. App. 430; *Leahy v. Cheney,* 90 Conn. 611 (98 Atl. 132, L. R. A. 1917 D 809); *Robinette v. Hubbard Coal Min. Co.,* supra; *Trautman v. Traub,* supra; *Quirk v. Sunderlin,* 23 Idaho 368 (130 Pac. 374); *Voorhees v. Combs,* 33 N. J. L. 494; *McKelvy v. Choctaw Cotton Oil Co.,* 52 Okla. 81 (152 Pac. 414); *Carr v. Chartiers Coal Co.,* 25 Pa. 337; *McGregor v. Harm,* supra, and note in 30 L. R. A. (N. S.) 649; *Seevers v. Cleveland Coal Co.,* 158 Iowa 574.

Where there is established the existence of a general custom to pay, in addition to the regular compensation, for work in excess of a given number of hours per day, or on Sundays or holidays, so uniform and notorious as to warrant the presumption that the contract of employment was made with reference to it, a recovery may be had for extra services so rendered, although there was no express promise to pay.    26 Cyc. 1036; *McKelvy v. Choctaw Cotton Oil Co.,* supra; *Schurr v. Savigny,* 85 Mich. 144 (48 N. W. 547); *Robinette v. Hubbard Coal Min. Co.,* supra.

It is also held that there may be a recovery for extra services, in the absence of an express agreement to pay therefor, where it is shown that they were rendered with the expectation and belief on the part of both employer and employee that they were to be paid for in addition to the regular stipulated compensation.    *Elwell v. Roper,* 72 N. H. 254 (56 Atl. 342); *Middlebrook v. Slocum,* 152 Mich. 286 (116 N. W. 422); *Watcham v. Inside Inn Co.,* 159 Mo. App. 33 (139 S. W. 228).   See, also, note to *McGregor v. Harm,* supra, in 30 L. R. A. (N.-S.) 649, where it is said that compensation is recoverable in any case in which there is evidence from which reasonable men might find that the extra services were rendered with the expectation and belief, both on the part of the claimant and on the part of the employer, that they were to be paid for.   This rule was recognized by this court in the case of *Wilford v. Devin,* 43 Iowa 559, where it was held that, if it might be found from all the circumstances that there was an understanding that the extra services should be paid for, a verdict for the plaintiff would not be disturbed. In *Trautman v. Traub,* supra, it was said, speaking of a claim to recover compensation in excess of that already paid, for services

not shown to be without the scope of plaintiff's employment:

"It is true, as contended, that, in order to recover, plaintiff was not bound to prove an express contract, and that, upon a sufficient showing, she would be entitled to recover as upon an implied agreement."

There is nothing in the original contract of employment, as testified to by appellant or as evidenced by the circulars or orders issued by appellee, under which the services of appellant were rendered, from which it could be found that there was any express promise to pay him extra compensation for labor on Sundays or holidays, or that performed in excess of any given number of hours per day.

Appellant, however, pleaded a general custom among interurban railways and their agents and employees that eight hours constituted a day's work; and that no work should be done on Sundays and legal holidays, unless paid for as overtime; and that time worked in excess of eight hours per day and on Sundays and legal holidays should be paid for extra, as overtime, in addition to regular wages or salary; and that appellant's contract of employment was entered into by both parties with reference to such custom.

Objections were sustained to questions framed to disclose the knowledge of witnesses as to the existence of a custom in that respect, and as to the character of the custom. In this we think there was error. Appellant was entitled to

3. TRIAL: reception of evidence: questions not revealing expected answer.

show, if he could, that there was a general custom among interurban railways, or upon appellee's line, that employees such as he should be paid, in addition to the stipulated salary, for work in excess of eight hours per day, or on Sundays or legal holidays. There is nothing in the record, however, to show what appellant expected to establish, had the questions been answered. It will not be presumed that the answers would have tended to establish either knowledge of a custom on the part of the witness or that the custom was as claimed by appellant. In such a state of the record, we cannot say that the error was prejudicial. *Arnold v. Livingstone*, 155 Iowa 601; *Jacobs v. City of Cedar Rapids*, 181 Iowa 407; *Wangen v. Upper Iowa Power Co.*, 185 Iowa 110.

Appellant testified that, a short time after the camp started,

and at a time when the volume of business in the territory over which he had charge was under discussion, appellee's general manager, in his presence, stated: "You are going to be taken care of for such actions as this." And that, at another time, in response to complaints of others, he stated:

"Now we are just as busy down here, men, in Des Moines, as you are out here on this occasion, and we can't run after every hour,—we have other things to take care of; but you will be taken care of for this later on."

And that, on another occasion, after appellant had called his attention to the extraordinary duties he claimed to be performing, he said to appellant:

"Now after this thing is over, we are going to do the right thing."

One witness testified that, in the spring of 1918, when appellant and others were asking for more pay, the general manager said:

"You will all be taken care of as soon as the interurban could get around to it; but it could not do everything at once."

Another witness testified that the general manager said to appellant and others:

"Well, you fellows will be taken care of for long hours like this. There may be lots of cases like this; you will be taken care of in the long run."

That appellant very frequently worked more than eight hours per day and on Sundays and legal holidays is not disputed.

Upon this record, we are of the opinion that it was for the jury to determine whether, during a part, at least, of the time of appellant's employment, it was contemplated by both parties that appellant should be paid for some part or all of the labor performed by him on Sundays or holidays, or in excess of an ordinary day's work, in addition to his salary. *Watcham v. Inside Inn Co.,* supra. This being so, it was manifestly error to direct a verdict for appellee upon this branch of appellant's claim, unless it must be held that appellant's acceptance of checks for his salary, or the payment to him of $40 for overtime, constituted a payment in full, or an accord and satisfaction.

The checks received by appellant are not set out in the record. We understand that those given for salary all contained

the words, "For all services rendered up to and including above date;" but that this statement did not appear upon the expense checks or upon the one for $40 overtime. The amounts paid appellant for expenses were not, by express direction of appellee's general manager, put on the pay rolls. The checks for salary containing the statement quoted were merely receipts, and susceptible of parol explanation as to their purpose and the intent of the parties. The acceptance and indorsement of them by appellant would be no more than presumptive evidence of payment in full. Under the testimony tending to establish an understanding of the parties that payment for overtime should be made at some future date, it was a question for the jury, under proper instructions, whether the presumption of payment arising from the acceptance of the checks was overcome. *Yardley v. Iowa Electric Co.,* 195 Iowa 380.

4. PAYMENT: receipts: parol explanation.

The same thing is, in effect, true of the plea of accord and satisfaction. If, according to the understanding of the parties, payment for overtime was to be made only at some future date, the question was not then in dispute, and the acceptance of the checks for salary was not a settlement of the claim for overtime. *Yardley v. Iowa Electric Co.,* supra. The statements of appellee's general manager, if relied upon by appellant, afford some explanation of his failure to include his overtime in the semimonthly pay rolls, or to make an earlier demand.

5. ACCORD AND SATISFACTION: payment: effect.

The check for $40 for overtime was given in payment for overtime on a particular occasion, and did not purport, on its face, as we understand, to be in full. The payment for overtime on one occasion would not, unless intended by the parties to be in full, operate, as a matter of law, to defeat a recovery for overtime on other occasions, if appellant showed himself entitled thereto. The weight to be given such payment, as affecting his claim that it was contemplated by both parties—either because of the existence of a custom with reference to which his contract of employment was made, or otherwise—that he should be paid extra for overtime, would be for the consideration of the jury.

Complaint is made of the admission in evidence of a copy

of a letter received by appellant from appellee's general manager. The objection made did not go to the fact that it was a copy. The receipt of the letter and the correctness of the copy were admitted by appellant. The letter was material and competent, and there was no error in overruling the objection made to its admission.

It is unnecessary to consider other errors assigned, as the question may not arise upon a retrial.

For the error in refusing to submit to the jury appellant's claim to recover for overtime, the case must be and is—*Reversed and remanded.*

ARTHUR, C. J., and STEVENS and DE GRAFF, JJ., concur.