MARY CARLIN, Appellant, v. FRED DAY et al., Appellees.

CONTRACTS:   Requisites, Etc.—Implied Contract Supplanting Express One on Same Subject—Work and Labor.   An express agreement for a specified wage for a specified service, excludes an implied agreement for a different wage for the same service.

*Appeal from Polk District Court.*—W. H. McHENRY, Judge.

NOVEMBER 26, 1917.

SUIT to recover the value of services upon a *quantum meruit*.   At the close of plaintiff's evidence, the trial court directed a verdict for the defendant.   The plaintiff appeals. —*Affirmed*.

*B. J. Cavanagh,* for appellant.

*James A. Howe,* for appellees.

EVANS, J.—It appears from the evidence of plaintiff that she was employed by the defendants to work for them during the period of time covered by her claim, at an agreed price, first, of $12 per week, which was later advanced to $15 per week; and that she had received such amount so agreed upon in full, payment thereof being made in monthly installments.   The plaintiff was a "practical nurse."   What is meant by this designation is that the plaintiff did nursing, although she is not a graduate nurse.   The occasion of her employment was that Mr. Davis, the father of the defendant Mrs. Day, was an invalid, and a member of the family.   The defendants advertised for help, and the plaintiff answered the advertisement.   She testifies as follows:

"They talked to me on this occasion about the work I was to do and about wages.   She asked me what I would charge, and I said $15 a week, and she said, 'That is too

much; don't you think you could take a little less?' I said, 'For nursing and lifting a heavy man like that, that can't move only as he is lifted, night and day, it is a serious position. I am good for it all right, but I don't like to go for $12.' She spoke about other things, and gave as a reason I won't mention that she only could pay $12. I said, 'If you can't do it, I will take $12.' I said, 'I don't want to do much housework at $12.' She said, 'I don't care; if you take good care of dad, you won't have much housework to do.' On Friday I went. She said she couldn't pay any more wages. I said I wouldn't like to do much housework and work for $12, for I wouldn't get much rest with that old gentleman. She said, 'Fred and me will do the work; you won't have much bother; you come and take care of dad, and you won't have much bother with the housework.' I was good for the case when I went there, and it seemed Mr. and Mrs. Day were both pretty sickly people, and I helped all the time."

The plaintiff began work on the 3d day of July, and did general housework in connection with her care of Mr. Davis, the family consisting of five persons. On November 19th, Mr. and Mrs. Day left for Rochester, Minnesota, where Mrs. Day underwent a surgical operation. They returned five weeks later. During their absence, the family consisted of three persons, including a young nephew, 17 years of age, whose duty it was to take care of the furnace. This duty was not faithfully performed, according to plaintiff, and, upon her complaint, the young man ceased to be a member of the family shortly after the return of the defendants. The plaintiff testified further as follows:

"When they were going away to the hospital at Rochester, in November, they and myself had a talk about my doing the housework. This conversation was about November 19th. I said, 'You are going away, and there is

nobody left here to help, and the boy and the old gentleman are here, and my patient is here, and winter is here, and the furnace is here; and if I undertake this work I expect to be paid for it;' and Mr. and Mrs. Day said, 'We will pay you for it; we will give you all it is worth;' and I said that was satisfactory."

She also testified that, shortly prior to the 19th day of November, her wages had been raised by an express agreement to $15 a week, and such sum was thereafter paid to her. After the return of the defendants, the plaintiff continued in the service, doing the same kind of work as before, and receiving therefor $15 per week at stated periods, receipting therefor in full each time of payment. It appears also that, shortly after the date of the return of the defendants from Rochester, the plaintiff received an excess payment of $10. No reference to such excess payment is made in the oral evidence. All receipts given by plaintiff were "in full." Some of them recited the fact that they covered nursing and housework. Others contained no reference to the nature of the plaintiff's services. The plaintiff continued in the service of the defendants until the death of Mr. Davis, which occurred on May 16, 1915. A few days later, she presented a statement of her bill for $65.35, which was paid, and for which she receipted "in full." She has brought this action for 25 weeks of domestic service at $5 per week, alleging that the price charged is the going wage for such services. Her petition is bottomed, not upon any express agreement for extra pay, but wholly upon an implied agreement therefor.

The sum of the situation is that the plaintiff entered the employment of the defendants under an express agreement fixing her wages, and that she performed her work in pursuance of her employment, and received her express wages therefor. Her own testimony shows that she understood the general nature of the service expected from her

to be *nursing* and *housework*. It goes without saying that the two lines of service are very closely associated. The express agreement between the parties covered the field of their contractual relation. The plaintiff sold her working time for $15 a week. If improper service was demanded of her, she could terminate the contract. But she could not continue under and yet ignore it. The express agreement as to wages left no room for an implied one for a different wage.. She did not plead an express agreement for additional wages. The case is quite similar in its facts to *Jerome v. Wood*, 39 Colo. 197, wherein recovery was denied. See also *Voorhees v. Executors of Woodhull*, 33 N. J. Law 494; *Mathison v. New York Cent. & H. R. R. Co.*, 76 N. Y. Supp. 89; *Meginnes v. McChesney*, 179 Iowa 563.

We think the trial court properly directed a verdict, and its order is—*Affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.