GEORGE GILLING, Appellee, v. B. P. HELD, Appellant.

**APPEAL AND ERROR:** Reservation of Grounds of Review—In-
1   structions—Failure to Except. Allowing a cause to be submitted
to the jury on a certain theory of law, as reflected in the in-
structions, without objection or exception thereto, precludes sub-
sequent complaint by the non-objecting party.

**NEW TRIAL:** Grounds—Misconduct of Parties—Discussing Cause
2   With Jurors. Improperly discussing one's cause with members
of the jury panel is not ground for new trial when no discus-
sion of any kind was had with the jurors who actually heard
the cause.

*Appeal from Hardin District Court.*—R. M. WRIGHT, Judge.

NOVEMBER 26, 1917.

ACTION at law to recover on a *quantum meruit* for al-
leged services rendered as a cement mason and for certain
other services rendered as a carpenter and for certain over-
time as a farm laborer. The answer was a general denial,
a plea of settlement, and a counterclaim. Verdict for plain-
tiff, and defendant has appealed.—*Affirmed.*

*J. H. Scales,* for appellant.

*Lundy, Peisen & Soper,* for appellee.

EVANS, J.—1. The material facts in the
case are not greatly in dispute. The par-
ties were both residents of Ackley, Iowa.
The defendant was the owner of a large
farm, situated in North Dakota. In April,
1913, the parties entered into an oral agreement, whereby
the plaintiff agreed to render the services of himself and
wife to the defendant at $60 per month. They were to go
upon the defendant's farm in North Dakota and keep house

1. APPEAL AND
   ERROR: reser-
   vation of
   grounds of re-
   view: instruc-
   tions: failure
   to except.

thereon, and the defendant was to furnish all provisions.
The service of the plaintiff's wife contemplated the boarding
of help on the place.    The service of the plaintiff was to be
of the general nature incident to such a farm.    The farm
buildings thereon were only partially built, and consider-
able work was done in their completion.    This work con-
sisted in part of cement work and in part of carpentering.
Much of this work was done by the plaintiff.    Field work
also was done by him.    This service contracted for was ren-
dered to the defendant for a period of something more than
5 months.    The plaintiff received payment from time to
time at the contract rate of $60 per month.    He has not
sued upon the contract.    His petition was in three counts.
The first count was for mason work at a *quantum meruit*
of 50 cents an hour.    His third count was for carpenter work
at the same rate per hour.    His second count was for over-
time for farm work, at 20 cents per hour.    The trial court
dismissed the second count, and submitted the case to the
jury on the first and third counts only.    The jury rendered
a verdict for the plaintiff for $350.    Upon motion for a new
trial, the trial court reduced the verdict to $200, and en-
tered judgment for such amount.

The appellant specifies no particular errors relied on
for a reversal, but submits his brief upon the general mer-
its of the case.    He challenges the general theory upon
which the case was submitted, and contends, in effect, for
the conclusiveness of his express contract.    Upon the rec-
ord before us, there is no way that we can reach that ques-
tion.    Appellee insists that no exceptions were taken to the
instructions.    The record sustains this contention.    The
instructions, therefore, are not subject to review, and they
have become the law of the case.    The theory on which re-
covery was permitted is set forth in Instructions Nos. 10
and 11.    Following these as the law of the case, no legal
ground of complaint is left to the appellant.    Whether, in

view of the express agreement of the parties, there was any room for the operation of an implied agreement, is a question upon which we cannot pass herein, and upon which, therefore, we express no opinion. See *Carlin v. Day,* 181 Iowa 903.

In fairness to the veteran counsel for the appellant, it should be said that he conducted the litigation under the distractions of painful illness, and this doubtless accounts for much of the condition of the record.

2. One of the grounds for a motion for

**2. NEW TRIAL: grounds: misconduct of parties: discussing cause with jurors.** new trial was misconduct of the prevailing party, in that he had discussed his case in advance of the trial with members of the regular jury panel. This ground of complaint was supported by the affidavits of three of such members, each of whom made affidavit that the plaintiff had made certain statements in his hearing, pertaining to his case. These members of the panel, however, were not jurors in the trial of this case. A counter showing was made in resistance to this ground of the motion, supported by the affidavits of the twelve jurors who sat on the trial, whereby each juror testified that the plaintiff had not approached him in any way nor at any time concerning his case. This was an abundant showing in resistance to justify the finding of the court adversely to the defendant on such ground.

3. As already indicated, the appellant presses upon our attention the larger merits of the case and the manifest injustice of the judgment. To this it would be sufficient to say that the judgment as entered is not without support in the evidence. The case, however, has its unique features, which have not failed to attract our attention. The merits of the contention, pro and con, are deeply concealed in many incongruities on both sides.

As to plaintiff, though he purported to do farm work at $60 per month for somewhat over 5 months, yet he has

sued for 1,057 hours for mason and carpenter work done during the same period of time at 50 cents per hour. This would mean more than 105 days of 10 hours per day, which would cover every working day in a period of 4 months. This would leave but little more than one month for farm work, which was paid for at the rate of $60 per month for 5 months. But in addition to the mason and carpenter work, he sued also for 248 hours *extra time* for farm work. This would be the equivalent of 25 days at 10 hours a day, and would take practically all of the working days in the other month. So it is manifest that the claim of the plaintiff, added to what he had already received under the express contract, involved considerable expansion.

On the other hand, the defendant sent the plaintiff and his wife to North Dakota and deferred starting their wages until after they got there. He charged against them their railroad fare and freight paid on their goods amounting to $117. It would cost them presumably the same amount to return. If the defendant's farm had been a few miles further distant, the expense of going and coming would have absorbed the plaintiff's entire summer's wage. As it was, it left him a very little margin. The oral agreement, as testified to by the plaintiff, would not justify the charging of the traveling expenses to the plaintiff, and it is at least doubtful if such charges could be justified under the testimony of the defendant himself as to the original agreement.

It further appears that, on the day of the separation, the parties had a fight "before breakfast." Though the fight preceded the breakfast, no breakfast followed the fight. The preparation of the breakfast for that morning was the function of the plaintiff, his wife being absent. He had overslept somewhat; and, when the defendant was ready for breakfast, the breakfast was not ready for the defend-

ant. This lapse on the part of the plaintiff could have been passed in silence by the defendant, but it was not. In excusing himself, and by way of mitigation presumably, the plaintiff said that the defendant was a miser. The defendant met this assertion with a general denial, duly verified, and supported by the poker as an exhibit. The chronological order of events was lost at this point. The details of what transpired while the parties were on the floor are involved in some confusion, the only specification being that the neutrality of a washing machine was violated by one or both of the belligerents. A peace by negotiation having been attained, the plaintiff left. The counterclaim interposed herein by the defendant claimed damages from the plaintiff, not for assault and battery, but for quitting. In support of his counterclaim, the defendant proved, by himself as a witness, that the plaintiff was worth much more than he was getting, and that the defendant had found it impossible to find anyone who could fill his place. By such proof of his counterclaim, the defendant exposed his flanks in the main case, and suffered the usual military consequences. In view of the defendant's adroit bookkeeping, whereby he made the plaintiff's employment to begin *after* his arrival in North Dakota instead of *before,* and in view further of the great value and indispensable character of the plaintiff's service, as testified to by the defendant, it would have required a course of study in a law school for any juror before he could be expected to see clearly the legal reasons why the plaintiff's compensation should be further diminished. Even legal reason must have a basis of proved facts, and these proved facts must be attained through the jury. Manifestly, the jury did not adopt the defendant's point of view. Manifestly, also, if a new trial were granted, it would be of doubtful value, if not a new danger, to the defendant, unless he were ready to shorten his front by a withdrawal of his counterclaim.

Looking at the case, therefore, in its entirety, helpless to correct specific errors, if any, and considering the case only on its larger merits, we should be unable to find that the judgment as entered was not approximate justice.

For the reasons indicated, we cannot interfere. The judgment is accordingly—*Affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.