# CHARLESTON.

JOHN ROBINETTE v. HUBBARD COAL MINING COMPANY.

Submitted April 13, 1921.    Decided April 26, 1921.

1. MASTER AND SERVANT—*Additional Compensation Depends on Contract.*

   The right of an employee, engaged to perform services for a stated monthly remuneration, to recover additional compensation for extra services rendered at the request of his employer, depends upon the existence of a special contract to that effect, either express or implied. (p. 519).

2. SAME—*Additional Compensation Not Inferred from Request for Service.*

   The mere request for the additional service, in the absence of an express agreement in regard thereto, generally does not justify the inference of an offer to pay anything in addition to the compensation specified in the original contract, it being assumed that the extra services were requested and performed as an incident of the employment. (p. 519).

3. Same—*Additional Compensation Recoverable for Service Plainly Beyond Scope of Original Contract.*

Additional compensation can be recovered only where the service requested is so different in nature from that originally agreed upon and so plainly beyond the scope of the original contract as to rebut the presumption just noted and warrant the inference of an implied promise to pay therefor. (p. 519).

4. Same—*Burden of Proof is Upon Servant Suing for Additional Compensation.*

Upon the plaintiff rests the burden of showing facts and circumstances sufficient to justify the inference of such an implied promise. (p. 519).

5. Same—*Promise to Pay for Extra Services Determined on Entire Transaction.*

In determining the existence of an inference of an implied promise to pay for the extra service requested and performed, the court or jury, as the case may be, is not limited in its consideration merely to the question whether the services were similar in character to those usually performed under the employment, but should consider all the facts and circumstances connected with the entire transaction. (p. 520).

6. Same—*Additional Compensation Question for Jury.*

Whether a contract to pay additional compensation for extra services requested by the employer should be implied is a question of fact for the jury, unless only one inference can reasonably be drawn from the nature of the services and circumstances, or unless the defendant has withdrawn the issue from the jury by a demurrer to the evidence. (p. 520).

7. Same—*Compensation for Overtime Not Recoverable in Absence of Agreement.*

In the absence of an express agreement therefor, or of a custom so general, uniform and certain that it can be said the parties contracted with reference to it, a person employed to perform services for a stated periodic remuneration generally cannot recover compensation for overtime work of the same character voluntarily performed at the request of his employer. (p. 521).

8. Same—*Compensation for Overtime Waived.*

Where an employee voluntarily continues for a considerable period of time in a position where such overtime duties are regularly required, known to him from the first day he undertook the work, receives the compensation agreed upon

as a monthly salary, fails to insist upon a definite under-
standing and agreement with regard to additional remuner-
ation for such overtime work, and protests but feebly against
it, he will be deemed to have.treated it as a mere incident
of his usual duties, and to have waived any right to demand
extra compensation, when claimed after he is discharged.
(p. 522).

9.  APPEAL AND ERROR—*Where Demurrer to Evidence was Prop-
erly Sustained, Error in Rejection or Admission of Evidence
will not Reverse.*

If, treating as excluded all evidence improperly admitted,
and as admitted all evidence improperly excluded, insofar as
profert thereof is made on the record, the ruling of the trial
court upon a demurrer to the evidence was plainly right, error
committed by it, if any, in the admission or rejection of such
evidence, will not reverse the judgment.   (p. 523).

Error to Circuit Court, Mineral County.

Action by John Robinette against Hubbard Coal Mining
Company. Judgment for defendant, on demurrer to evi-
dence, and plaintiff brings error.

*Affirmed.*

*Harry G. Fisher,* for plaintiff in error.
*D. E. Cuppett,* for defendant in error.

LYNCH, JUDGE:

The proceeding reviewed for error, begun by the notice of a
motion for judgment based upon an alleged breach of a ver-
bal contract of employment, terminated unfavorably to plain-
tiff, the defendant, a coal mining corporation, having at the
end of the trial withdrawn from the jury, by a demurrer to
the evidence, the right to pass upon the merits of the contro-
versy. This demurrer the court sustaind and entered the
judgment complained of.

John H. Robinette, the plaintiff, and Hubbard Coal Mining
Company, represented by J. J. Johnson, its superintendent,
entered into the contract of employment December 1, 1918, or
near that date, at plaintiff's residence in Keyser, there being
also present plaintiff's wife and two daughters and James
Keller, all of whom, except a daughter who was not summoned
and Johnson who, though summoned, was not examined,

agreed upon its terms and conditions. Their testimony stands uncontradicted and unimpeached, unless the subsequent facts and circumstances are sufficient to cast doubt and uncertainty upon the details of the transaction as testified to by them. As so proved plaintiff was to have the personal supervision, management, control and operation of the plant owned and used by defendant in the generation or production of electricity as the motive power for its coal mining business and lighting facilities for the little mining village which had sprung up in that vicinity, for which service he was to receive $130 per month, but was not to be required to work more than 8½ hours each day, commencing at 7 A. M. and completing the day's work at 3:30 P. M. An effort was made in the early stages of the trial to show that plaintiff was to work only 8 hours each day, but when testifying in his own behalf. on direct examination, plaintiff admitted that Johnson informed him of the necessity of working the additional half hour and that he consented thereto and "told him that was satisfactory." Moreover, plaintiff's wife and daughter and James Keller, all of whom were present when the contract of employment was entered into, agree that the day's work was to consist of 8½ hours. Sometime between the 1st and 4th of December plaintiff entered upon the discharge of the duties of the employment and continued to perform them until about April 30, 1920, when as a result of some proposed enlargement of his contractual duties by a successor of Johnson as superintendent of the mines, which he declined to perform, plaintiff was discharged and abandoned the employment. This action soon followed.

The purpose of the action was to recover from the company wages for the overtime which plaintiff had been compelled to work from the first day he assumed his duties with defendant. Instead of 8½ hours, which the evidence shows the contract of employment contemplated, his duties required him to work 12 hours each day, commencing at 6 o'clock in the morning and terminating in the evening at the same hour. His duties as chief engineer were not onerous but necessitated his presence at the plant during the hours specified. At

or near the date of plaintiff's employment, the witness Keller also was employed to work the night shift, but after learning that he would be required to devote 12 hours to his duties, instead of 8½ as he had expected, voluntarily abandoned his position after two or three weeks' service. Plaintiff and Keller both knew from the first day of actual service that the defendant company expected and required them to work 12 hours each day, and the former, with that knowledge, remained and continued to discharge his duties for a period of seventeen months. He regularly accepted his semi-monthly pay checks for $65, and on every occasion, except the pay day immediately after his discharge, signed the pay roll with its printed acknowledgment of "the receipt in full of all claims and demands to this date." He testifies that on several occasions he protested to Johnson, the superintendent who had employed him, and to his successor, Leps, and a few times to Miss Murray, the bookkeeper and stenographer who had charge of the pay roll. Though summoned as a witness on behalf of the plaintiff and present at the trial, Johnson was not called to testify, while Leps was not summoned by either party, and therefore we do not have the benefit of their views of the alleged contract or of the nature of the protests entered by plaintiff. Miss Murray directly contradicts him and swears that he did not at any time during the seventeen months of his service protest to her, but on the other hand seemed satisfied with his position and the compensation paid and received. However, in view of the submission of the case on demurrer to the evidence, there is sufficient testimony to warrant the conclusion that plaintiff protested against the overtime and sought additional compensation therefor. The question presented, therefore, is whether one employed at a monthly salary to perform specific duties for stated hours each day, but who is required to work overtime continuously from the first day of his service to the date of his discharge, over his protest and with repeated requests for additional compensation, can recover from his employer proportionate compensation for his overtime work.

Undoubtedly there are circumstances under which a per-

son employed to perform services for a stated remuneration during a specified period may be entitled to recover extra compensation from his employer for additional services rendered at the request of the latter. But the right to enforce such a claim depends upon the existence of a contract therefor, either express or implied. Here no express contract for additional remuneration was proved or even attempted to be proved, and plaintiff's right, therefore, if any, depends upon the existence of an implied contract created by the very circumstances of the case.

Ordinarily, when one requests another to perform services for him, there is an implied promise to render reasonable and just compensation therefor. But the application of this rule generally is limited and restricted, subject to an exception hereafter to be noted, to situations where the person performing the service was not already in the employ of the one requesting it. If he is already employed by the latter, the mere request for the additional service, in the absence of an express special agreement in regard thereto, generally does not justify the inference of an offer to pay anything in addition to the compensation specified in the contract of employment, it being assumed that the extra services were requested and performed under such contract as an incident thereof. It is only when the service requested is so different in nature from that originally agreed upon and so plainly without the terms of the original contract of employment as to rebut the presumption just noted and warrant the inference of an implied promise to pay therefor, that additional compensation may be recovered. 3 Page on Contracts (2d Ed.), § 1465 et seq; 2 Labatt, Master & Servant (2d Ed.), § 553 et seq.

The effect of this doctrine is to place on the plaintiff the burden of showing "that the services requested were of such a character and were rendered under such circumstances as would lead to the conclusion that a servant performing such services would be reasonably justified in the belief that he would be allowed additional compensation therefor, and that an employer making such request would be reasonably expected to know that additional compensation would be ex-

pected.  In other words, the character of the work requested and the circumstances attending the request and performance must be shown to be of such a nature as to justify the inference that extra compensation was contemplated by both employer and employee.''     *Pittsburgh etc. R. Co.* v. *Marable* (Ind.), 126 N. E. 849.  Ordinarily, of course, the question of the similarity or dissimilarity of the original and extra services and of the inference to be drawn therefrom generally is a matter for jury determination, unless the inference is such that only one conclusion is reasonably justified, in which case the court should decide the question, or unless, as in this case, the defendant has withdrawn the issue from the jury by a demurrer to the evidence.     And in determining the existence of an inference of an implied promise to pay for the extra services requested and performed, the court or jury, as the case may be, is not limited in its consideration merely to the question whether the services were similar in character to those usually performed under the employment, but should consider all the facts and circumstances connected with the entire transaction.  *Pittsburgh etc. R. Co.* v. *Marable,* cited.

The question of an implied promise to pay arises more often in cases involving extra work more or less different in nature from that contemplated by the primary contract, though within the hours contemplated by it, than it does in cases relating to overtime work of the same character.     The two classes of cases, however, are very similar and are to be determined largely by the same fundamental principles.     In the former the test applied is the similarity or dissimilarity of the extra work to the services the plaintiff was performing in the ordinary course of his employment.     If it is so similar in nature and so intimately connected therewith that he may reasonably be supposed to have had it in mind as a possible incident of the work for which he was engaged, recovery of additional compensation for such extra service will be denied, in the absence of an express agreement therefor.     2 Labatt, Master & Servant (2d Ed.), § 554; 3 Page on Contracts (2nd Ed.), sec. 1465; *Mathison* v. *N. Y. Cent. etc. R. Co.,* 72 App. Div. 254; *Carlin* v. *Day,* 181 Ia. 903; *Voorhees* v.

*Combs,* 33 N. J. L. 494; *Leahy* v. *Cheney,* 90 Conn. 611.   On
the other hand, as Labatt says, "courts, while leaning strong-
ly against the inference of a right to recover compensation for
extra work, concede that such right may be predicable, even
in the absence of an express agreement, if the work for which
compensation is claimed was of such a nature as to render
improbable the supposition that it was taken into account by
the parties when the rate of wages was arranged." 2 Labatt,
Master & Servant (2d Ed.), § 554 b; 3 Page on Contracts
(2d Ed.), § 1466, and cases cited.   See also *Bryden* v. *D. L.
& W. R. Co.,* 262 Pa. 211.   "This rule is based upon the prob-
ability that for such service there was an intention on the
part of the master to pay extra compensation upon which the
servant might rely.   But this rule must be cautiously ap-
plied, and the service must be so far outside of the sphere of
the employment as to indicate a probable intention on the
part of the master to allow extra compensation therefor.   If
the question be one of doubt, the right to extra compensation
should rest only upon an express agreement."   *Mathison*
v. *N. Y. Cent. etc. R. Co.,* cited.

With regard to the second class of cases, those dealing with
compensation for overtime work, the rule is "that, in the ab-
sence of proof of an express agreement, or of a custom so gen-
eral, uniform and certain that it can be said the parties con-
tracted with reference to it, a person employed for a definite
period at certain wages cannot recover compensation for extra
work voluntarily performed at times other than those at
which it was stipulated or understood that his duties were to
be discharged.   In other words, an implied promise cannot
be predicated on the part of the employer to pay compensa-
tion for such work to a person who is regularly employed
and receives wages at regular intervals." 2 Labatt, Master
& Servant (2d Ed.), § 555; 26 Cyc. 1036; 18 R. C. L. 534.
In *Levi* v. *Reid,* 91 Ill. App. 430, the court held that an em-
ployee, who continues in his employment, working more than
the usual hours when requested, without particular protest,
and receives his stipulated wages weekly, knowing that his em-
ployer regards it as full payment for his week's work, there-

by accepts his employer's understanding of the contract as his own, and waives all claim to additional compensation. And in *Gutweiler* v. *Lundquist,* 200 Mo. App. 526, the decision is "that a servant, employed at a stipulated wage, cannot recover for extra work, performed upon evenings or holidays, in the absence of an express contract on the part of the master to make additional compensation therefor."

Where an employee voluntarily continues in a position under such conditions, known to him from the first day he undertook the work, receives the compensation agreed upon as a monthly salary, wholly fails to insist upon a definite understanding with regard to additional remuneration for such overtime, and protests but weakly against it, he will be deemed to have treated such overtime work as a mere incident of his usual duties, and to have waived any right to demand additional remuneration therefor. To hold otherwise would tend to throw the doors wide open to fraud and perjury on the part of discharged and disgruntled employees, who, by making out a prima facie case of an original contract providing for fewer hours than those voluntarily accepted, might induce a jury to mulct their former employers in damages for alleged overtime work. In so holding we are not seeking to throw all the burden and risk of the terms of employment upon employees. They can easily protect themselves by insisting upon a definite agreement with regard to such overtime on the occasion when it is proposed or demanded. By a special agreement entered into or understanding had with the employer at the time of his request for such work the employee can amply safeguard himself. In that way justice and fairness can be done to both parties and each will be protected against the other.

A different rule is sometimes followed in cases involving statutes limiting the hours of labor for each day's work. Under such circumstances it has been held that an employee who renders overtime services at the request of his employer may recover compensation therefor. *Wright v. State of New York,* 223 N. Y. 44; *Bachelder* v. *Bickford,* 62 Me. 526. In the New York case cited, involving an eight-

hour statute, the court said that the employer ''was power-
less to increase or diminish the amount of compensation fixed
by law. * * * Such compensation was to be paid for eight
hours' labor.   He could not demand or permit twelve hours'
labor for such compensation.   He had the alternative of em-
ploying additional help for the remaining eight hours or
permitting the locktenders then employed to continue to
work the additional hours and receive for the same the pre-
vailing rate of wages for such extra hours.''   Even as to
this proposition the authorities apparently are not harmon-
ious.   .3 Page on Contracts (2d Ed.), § 1468.   But con-
ceding, though not deciding, that the view adopted by the
courts of New York and Maine is the one to be preferred
when there is a statute designating what shall constitute  a
day's work, yet in this jurisdiction there is no such expres-
sion of legislative intent, except as to state employees (sec-
tions 1 and 2, ch. 15R, Code 1918) and in certain instances
railroad telephone and telegraph operators (section 71h, ch.
54, Code 1918).   In the absence of such a legislative guide,
common law rules and principles applicable to employment
contracts remain in full force and effect.   For these reasons
we are of opinion that the demurrer to the evidence was
properly sustained, because of plaintiff's failure to show some
special agreement or understanding with regard to such
overtime work, to rebut the presumption that the extra ser-
vices were recognized and performed as part of the contract
of employment, even though rendered under protest.

As a result of this conclusion, other assignments of error
become relatively unimportant.   Plaintiff has no ground for
complaint because of the court's refusal to give certain in-
structions requested by him.   The jury's conditional ver-
dict was for the full amount sued for, which was more than
plaintiff was entitled to under any view of the case.   Hence
any error committed in that regard was harmless.

Remaining assignments relate to the admission and re-
jection of certain testimony.   Without passing seriatim up-
on the various errors assigned in this regard, it is sufficient
to say that, if, treating as excluded all evidence improperly

88 W. Va.

admitted and as admitted all evidence improperly excluded, insofar as profert is made thereof on the record, the ruling of the court below upon the demurrer to the evidence was plainly right, error committed by it in the admission and rejection of such evidence, if any, will not reverse the judgment. *Taylor* v. *B. & O. R. Co.*, 33 W. Va. 39; *Lane Bros. & Co.* v. *Bott*, 104 Va. 615.

Our conclusion, therefore, is to affirm the judgment.

*Affirmed.*