No. 30,590.

DANIEL G. SHEETS, *Appellant*, v. H. L. EALES, *Appellee*.

(11 P. 2d 1020.)

Opinion filed June 4, 1932.

*C. M. Williams, D. C. Martindell* and *W. D. P. Carey*, all of Hutchinson, for the appellant.

*Charles S. Fulton* and *W. A. Huxman*, both of Hutchinson, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this action Daniel G. Sheets sued his employer, H. L. Eales, to recover compensation for extra services alleged to have been rendered to his employer which were unpaid and which he alleged amounted to $3,019.74. Plaintiff undertook to prove that defendant was indebted to him for services rendered under a written contract and also for extra services, but when his evidence was completed and he had rested, the court sustained defendant's demurrer to his evidence, holding that he had failed to establish a cause of action against the defendant.

There was an elaborate written contract of employment entered into by the parties on March 23, 1926, covering the services of plaintiff from January 1, 1926, to January 1, 1927. It was stipulated that plaintiff should assist defendant in carrying on the business of selling tires, tubes, gasoline, oils, grease, alcohol and other antifreeze materials for automobiles, and also for general tire repairing, and should receive as compensation one-fourth of the net

profits of all sales and for vulcanizing service. To provide for plaintiff's living expenses it was agreed that he might have a drawing account of $25 per week as against the anticipated net profits he was to receive. The contract defined "net profits" of the business to be those arising from the sale of commodities handled and from the vulcanizing after all salaries, rentals and other expenses commonly termed and classified as "overhead" are paid, and it was further agreed that the term "expenses" should include purchase price of tools, fixtures, machinery and general equipment as might be necessary to the proper conduct of the business. There was a stipulation, too, that the plaintiff should be interested only in net profits and was not to acquire any ownership in the business itself, nor in tools, fixtures, machinery or equipment. It contained a provision that the employee agreed to devote his entire time, skill, labor and attention for the compensation stated, and devote his time to the business from seven o'clock a. m. until closing time, the same to be regulated by the requirements of the business, which closing hour usually was about ten p. m., and that the employee should have his time off every other evening and every other Sunday.

Another provision was that the service might be terminated at any time by either party on giving the other ten days' notice in writing and upon the payment to the employee of what might be coming to him, but that the employer should be the sole judge of the cause for discharge, and that any agreement or arrangement whereby the employee has heretofore been employed by the employer is canceled, released and discharged.

Appellant claimed that he worked under this contract until the business was sold in July, 1929; that he worked eighty extra evenings and ten extra Sundays in 1926, and eight extra Sundays and sixty-eight extra evenings in 1927, which under the contract he was to have off. He gave testimony, too, to the effect that near the end of 1927 he told defendant he would have to have more money for 1928, and that defendant responded by saying, "Don't worry; I will take care of you." In December of 1927 he said he told defendant that he would have to have $45 to $50 per week if he worked for him in 1928, but no change was made in the contract and he said defendant replied, "Let it slide, and I will pay you a bonus at the end of the year that will make as much money." Plaintiff testified that defendant stated at one time, "We will agree on a settlement of the extra time which will be absolutely satisfactory." On another

occasion he said, "I always have paid you for extra time and I will pay you from now on." When he asked for extra pay in 1928, defendant said, "Let it ride and I will pay you that much in bonus."

On the other side the contention is that the compensation was fixed by the written contract, and that under numerous authorities cited payment for extra services cannot be required in the absence of proof of an express agreement to that end; and it is said, too, that the contract is one in which both employer and employee had a mutual interest in the success of the business; that is, the net profits of the business, and while no doubt the appellant rendered some extra service there is also no doubt but what he was interested in the business and his compensation was measured by the profits of the business. It was as much to his interest to increase the profits by extra service as that of the defendant, and it is said that being done in a mutual enterprise he is not entitled to recover for extra time under the theory of the contract.

It is conceded that there was proof of some extra time and extra service, and also proof of the subsequent statements of the employer that he would pay a bonus and also settle to the satisfaction of the plaintiff. The claim is, however, that it is apparent from all the testimony that he became dissatisfied with his contract at the close of 1927 and during 1928, when the profits became less than his drawing account. That plaintiff's testimony shows inconsistencies and a condition which justifies the inference that if one claiming for extra compensation wants to be paid therefor, he must produce a definite express contract to that effect.

The plaintiff was not to have a stipulated wage by the day, month or year, but his compensation was to be based upon the earnings or profits of the business. He was to get one-fourth of the net profits as remuneration for his services and, of course, an increase in the profits would correspondingly increase his compensation. In that sense he was interested in the sales made and the vulcanizing and repair work done, and that the time, skill and energy devoted to their business would inure to the benefit of both. The parties took care to define net profits and what should be treated as business expenses in figuring up net profits. Nothing was said in the contract about payment for any extra time spent or extra services rendered, but it did include the provision relating to the plaintiff giving his time and attention to the business, naming time to be regulated by the requirements of the business, and stating that plaintiff should have

time off every other evening and every other Sunday. Plaintiff claims that because he did not have time off the work done by him was extra services for which he was entitled to added compensation. It may be remarked that the extra work he claimed to have done was of the same character that he was employed to do under the contract. He says remarks were made from time to time by his employer in response to claims that he was not receiving enough money for the services rendered, that the response was, "Let it ride, I will pay you that much as bonus," and on another occasion the defendant said, "We will fix it up in another contract"; and on still another that, "We will fix it up satisfactorily," and other like vague expressions. It was never "fixed up" in another contract nor any direct promise made of what should be paid for any extra services. It may be assumed that in the course of the employment plaintiff may have performed services on more evenings and Sundays than were referred to in the paragraph relating to his diligence and devotion to business, and of the division of time between him and the defendant. But no agreement was ever entered into that any particular sum should be paid for any extra services that might have been rendered. He continued to work under the written contract and it, as we have seen, did not stipulate that payment would be made for any extra services.

In *Guthrie v. Merrill*, 4 Kan. 187, a plaintiff agreed to work for a stipulated price, the contract being silent as to extra services. The plaintiff claimed that he did extra work on Sundays, for which he asked payment. The court held that if he chose to perform such services, which were of the same kind as were included in the contract, he should be held to have performed them under the contract and that his claim for extra services could not be upheld.

In *Weaver v. Skinner*, 103 Kan. 97, 172 Pac. 1024, Weaver sought to recover against the administrator of an estate for the board and care of a man who was advanced in years and was ill. He was to be paid $2.75 a week as compensation, which was paid monthly for some time. Weaver claimed that the cost of living had increased, that the man he had in his care had suffered a paralytic stroke and that the care he was to furnish him was worth $15 a week. Weaver had complained to Skinner that he was not getting enough compensation and said that when Skinner was spoken to about it he remarked that, "He didn't have the money now, but intimated that he might have later." There was no agreement for additional com-

pensation. The court held that the demurrer to Weaver's evidence, which admitted the making of the contract, and there being nothing in the contract providing for additional compensation, the evidence was insufficient to establish the claim for extra compensation, and that the court should have sustained the demurrer to plaintiff's evidence.

In 25 A. L. R. 218 there is an extended note treating of a servant's right to compensation for extra work or overtime, and a rule was stated based on a vast number of authorities, as follows:

"It is generally held that there is a presumption of law that all services rendered by an employee during the period for which he is employed, of a nature similar to those required of him in the course of his regular duties, are paid for by his salary, and to overcome this presumption he must show an express agreement for extra compensation."

See, also, *Houghton v. Kittleman*, 7 Kan. App. 207; *Robinette v. Coal Mining Co.*, 88 W. Va. 514.

In our view the evidence of plaintiff failed to establish a right of recovery and the judgment sustaining the demurrer to his evidence is affirmed.