

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

August 2, 1977

Honorable Mike Atkins
County Attorney
Ector County
Odessa, Texas 79761

Opinion No. H-1033

Re: Sale at a discount and
"with recourse" by county
hospital of accounts receiv-
able from patients.

Dear Mr. Atkins:

You ask if a proposed financial arrangement between the
Odessa Medical Center Hospital and a state or national bank
would be illegal under Texas law. We have not been furnished
a proposed contract, but you explain:

> Under the transaction in question, if a
> patient proposed to pay his account at the
> hospital in installments over a period of
> time in excess of 60 to 90 days, that ac-
> count could be sold and assigned to a bank.
> The bank would discount the account at a
> fixed rate of interest and pay the differ-
> ence to the hospital at the time the ac-
> count was transferred to the bank. The bank
> would then undertake to collect the account.
> However, the account would be assigned with
> recourse on the hospital so that if reasonable
> collection efforts proved unsuccessful the
> account would be reassigned to the hospital
> and the remaining uncollected balance of
> the money previously paid by the bank to
> the hospital would be repaid to the bank out
> of current revenues of the hospital.

The proposed transaction is a sale of accounts receivable with
recourse to the hospital. See Chester v. Jones, 386 S.W.2d
544 (Tex. Civ. App. -- Tyler), dism'd as moot, 391 S.W.2d 722
(Tex. 1965). The word "recourse" in the context of such trans-
actions means to "resort to a person who is secondarily liable
after the default of the person who is primarily liable." In-
dustrial Bank & Trust Co. v. Hesselberg, 195 S.W.2d 470 (Mo.

1946); Ballentines Law Dictionary 1070 (3rd ed. 1969); 36A Words and Phrases 105. For the advantage of receiving its money at an earlier time and avoiding the collection chore, the hospital would surrender to the bank the collectable difference between the face amount of the accounts and their discounted value.

Odessa Medical Center Hospital is a county hospital operated and maintained pursuant to articles 4478 through 4493, V.T.C.S. As such, it is a county facility managed by a Board of Managers appointed by the Commissioners Court of Ector County. V.T.C.S. art. 4479. The Board has "general management and control . . . of all matters relating to the . . . fiscal concerns thereof. . . ." V.T.C.S. art. 4480. Article 4485, V.T.C.S., specifies that the superintendant of a county hospital "shall collect and receive all moneys due the hospital," but article 4487 makes hospital care and treatment "a charge upon the county" if the superintendent finds that the patient or his responsible relatives are unable to pay for it. When coupled with the Board's article 4480 power to generally manage and control all matters relating to fiscal concerns, we believe these provisions furnish ample statutory authority for transactions of the contemplated sort, assuming their constitutionality. See Attorney General Opinions M-912 (1971); M-807 (1971); V-1265 (1951).

The Texas Constitution prevents counties from pledging or lending public credit, or from releasing indebtednesses due them. Tex. Const. art. 3, §§ 52, 55; art. 11, § 3. And after the occurrence of events which give rise to an obligation on the part of an individual or corporation to the State, the Legislature has no power to release or diminish that obligation without consideration. State v. City of Austin, 331 S.W.2d 737 (Tex. 1960). Non-indigent patients at county hospitals become obligated to the county. V.T.C.S. art. 4488. However, we believe the sale to third parties by a county hospital of receivables from patients' accounts for less than the face value thereof would not generally be a "release" prohibited by the Texas Constitution.

In Lindsey v. State, 74 S.W. 750 (Tex. 1903), the Supreme Court of Texas considered article 3, section 55 objections to the sale for only $500 of an uncollectable $6,000 judgment obtained by a county against an insolvent bondsman. A statute [now V.T.C.S. art. 1621] purported to authorize such dispositions. The Supreme Court upheld the statute, expressly rejecting the argument that every sale of a judgment for less than its face value is a "release" of a part of it within the constitutional intent. The court observed:

> [W]e do not think that anything authorized
> by the statute comes within the mischiefs
> against which the inhibition in question is
> directed.  It is one thing to release debtors
> or extinguish their indebtedness, liabilities,
> or obligations without payment or performance,
> and quite another to obtain by sale under fair
> and prudent management, the value of such
> assets.

Id. at 751.  Cf. Lindsey v. State, 66 S.W. 332 (Tex. Civ.
App. 1901, no writ); Attorney General Opinion M-575 (1970).
See also City of Houston v. Bullard, 354 S.W.2d 224 (Tex. Civ.
App. -- Houston 1962, no writ).

Under the proposal as we understand it, the hospital would
receive two types of consideration in exchange for its assign-
ment of claims and its agreement to repurchase those claims
which prove uncollectable.  It would receive the discounted
value of the claims, and it would avoid the need to make collec-
tion efforts itself -- the bank would perform that service.  We
cannot pass upon the adequacy of consideration in a particular
transaction, but such an exchange made for adequate considera-
tion does not constitute a grant or donation violative of ar-
ticle 3, section 52 or of article 11, section 3.  Sullivan v.
Andrews County, 517 S.W.2d 410 (Tex. Civ. App. -- El Paso 1974,
writ ref'd n.r.e.).

Nor do we think the agreement to repurchase claims which
prove uncollectable would necessarily be infirm on other grounds.
Such an agreement would apparently create a contingent "debt" of
an uncertain amount but the creation of debts by counties (even
debts uncertain in fact or inexact in amount) is not constitu-
tionally prohibited if it is within the contemplation of the
parties that the debts are to be satisfied out of current reve-
nues for the year or out of some fund immediately controlled
by the county.  Tex. Const. art. 11, § 7; Brown v. Jefferson
County, 406 S.W.2d 185 (Tex. 1966); County of Ector v. City of
Odessa, 492 S.W.2d 360 (Tex. Civ. App. -- El Paso 1973, no
writ); Lewis v. Nacogdoches County, 461 S.W.2d 514 (Tex. Civ.
App. -- Tyler 1970, no writ).

We do not pass upon the particulars of any agreement or
arrangement, but it is our opinion that a transaction such as
you describe would generally be valid.

### S U M M A R Y

A transaction in which a county hospital sells and assigns to a state or federal bank accounts receivable from hospital patients at a discounted rate and with partial recourse on the hospital for un-collectable accounts would generally be valid.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

klw