**MBANK EL PASO NATIONAL ASSOCIATION, Appellant/Cross–Appellee,**

v.

**FEATHERLITE CORPORATION, Appellee/Cross–Appellant.**

No. 08–89–00318–CV.

Court of Appeals of Texas, El Paso.

April 11, 1990.

On Rehearing May 23, 1990.

Brenda J. Norton, Mark N. Osborn, Kemp, Smith, Duncan & Hammond, Claudia Dorgan Roberts, Kemp, Smith, Duncan & Hammond, El Paso, for appellant/cross-appellee.

Ronald R. Calhoun, Calhoun Morton & Villa, El Paso, for appellee/cross-appellant.

Before FULLER, WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

This appeal presents a relatively simple question on priority of lien claims to funds interpled into court. The trial court, finding that neither party had a security interest in the funds, divided them equally between the two claimants, each of which appealed from the judgment claiming entitlement to the entire amount because of a superior security interest. We reverse and render.

R.E. McKee, Inc., the general contractor for the Brock Residence Inn of El Paso, subcontracted with DMR Associates for the masonry work. DMR, in turn, contracted with Featherlite Corporation for masonry materials. Featherlite gave proper notice and filed a materialman's lien on January 6, 1984. In April of that year, DMR assigned to Featherlite $25,000.00 of the funds owed by McKee to DMR. On April 30, 1984, McKee, by letter, confirmed that a joint check in the names of DMR and Featherlite would be drawn from the retainage when received. Upon receipt of the assignment and McKee letter, Featherlite on April 30 signed and filed a release of its materialman's lien. Prior to those events, on August 30, 1983, MBank had lent funds to DMR, taking back a promissory note and a security agreement giving MBank a security interest in DMR's "accounts receivable whether now owned or hereafter acquired." When the retainage funds became available, McKee, well aware of the conflicting claims of MBank and Featherlite, filed this interpleader action tendering the remaining retainage funds of $22,110.72 into court. The court, rendering its decision entirely on stipulated facts, found that neither Featherlite nor MBank held a valid security interest, Featherlite because it had released its lien on April 30, 1984 and MBank because the funds were not an account receivable of DMR.

MBank contends that the trial court erred by its findings that the funds owed by McKee to DMR was not an account receivable of DMR and that MBank did not have priority to the funds by virtue of its security interest in such account receivable. Featherlite counters that not only were the funds not an account receivable as far as MBank was concerned but argues, in a single cross-point of error, that the court erred in failing to find a novation in Featherlite's release of lien in exchange for McKee's letter indicating that it would issue a joint check to DMR and Featherlite for the retainage when released by the owner.

The parties, by their fact stipulation in the trial court and by their briefs, are in agreement that although MBank had a valid security interest in DMR's account receivables, Featherlite's affidavit of lien gave it a priority interest from the time the lien was filed until it was released on April 30, 1984. MBank asserts that even if Featherlite had acquired a priority of interest in any funds owed to DMR, the amount owed did not lose its character as an account receivable either before or after the

lien was released. Featherlite argues that if the amount owed by McKee to DMR was ever an account receivable, it lost that character when McKee became obligated to pay Featherlite as a result of the latter's lien.

■ The parties stipulated that the funds tendered into court by McKee "represents funds owed to DMR for work done by DMR in connection with the construction of the Brock Residence Inn project." Under the Texas Uniform Commercial Code, "account" is defined as follows:

[A]ny right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance. Tex.Bus. & Com.Code Ann., sec. 9.106 (Vernon Supp. 1990).

The definition of "account" is generally construed to include "accounts receivable." *Chester v. Jones*, 386 S.W.2d 544, 547 (Tex. Civ.App.—Tyler 1965), writ dism'd by agr., 391 S.W.2d 722 (Tex.1965); *Texas Oil & Gas Corporation v. United States*, 466 F.2d 1040, 1050 (5th Cir.1972); *In re Cooper*, 2 B.R. 188 (Bankr.S.D.Tex.1980); Tex. Bus. & Com.Code Ann., sec. 9.106 comment (Vernon 1968 and Supp.1990). Where goods are sold or services rendered not for cash but on an open account, an account receivable is created. *In re Cooper*, 2 B.R. at 192. The above quoted stipulation of the parties fits the definition of an account or account receivable.

■ Featherlite cites *Citizens Fidelity Bank and Trust Company v. Fenton Rigging Company*, 522 S.W.2d 862, 863 (Ky. 1975) for the proposition that once the materialman's lien was filed, the debt was no longer an account receivable of the contractor owed by the owner but became a direct obligation of the owner to the subcontractor which had filed a mechanic's lien on the owner's property and therefore, the amount owed by the owner to contractor was not covered by the bank's prior security interest in the contractor's account receivables. There are no Texas cases on this exact point, primarily for the reason that, generally speaking, under Sections 53.123 and 53.124 of the Texas Property Code and the rules relating to priority of liens, inception of the mechanic's lien and relation back, the lien of a materialman, properly perfected, is superior and has priority over any other lien against the land or a security interest in goods or accounts that has not actually attached prior to the inception of the materialman's lien. Inception of the lien takes place when there first is a delivery of construction materials to the construction site and a properly filed lien relates back to that time. *Diversified Mortgage Investors v. Lloyd D. Blaylock General Contractor, Inc.*, 576 S.W.2d 794 (Tex.1978); Tex.Prop.Code Ann., sec. 53.-124 (Vernon 1984). MBank's security interest could not attach to an account receivable until it had come into existence and therefore would not be a perfected security interest under Section 9.303 of the Tex. Bus. & Com.Code. Compare with Section 9.310 which gives a mechanic or artisan a priority of lien for work enhancing or improving goods in his possession over a prior perfected security interest. *Gulf Coast State Bank v. Nelms*, 525 S.W.2d 866 (Tex. 1975); Tex.Bus. & Com.Code Ann., sec. 9.310 (Vernon Supp.1990).

■ At the time of its creation by the delivery of materials to DMR, the account receivable immediately became subject to the materialman's lien and MBank's security interest, while it would have attached while that lien remained an outstanding charge against the owner's property, was inferior to the lien except as to any amount owed by the contractor or subcontractor to the lienholder in excess of the latter's claim. The amount owed by the contractor to the subcontractor or lienholder would still be an account receivable but the funds that were retained or owed by the owner would be subject to the priority of the lien against his property and he has the absolute right to have the lien removed before he or the contractor make payment. Under *Citizens Fidelity Bank*, the Kentucky court recognized that the bank had a security interest in any amount owed to the contractor in excess of the lienholder's claim, presumably because it remained an account receivable to the contractor. Even

if we took Featherlite's position as supported by *Citizens Fidelity Bank*, that the funds owed by McKee to DMR lost their character as an account receivable, whatever amount was owed was an account receivable up until the time the lien was filed. When the lien was prematurely released before the funds were paid over to Featherlite, the funds owed to DMR, if they had lost it, regained the status of an account receivable when the release was filed. To hold otherwise would effectively nullify a creditor's security interest in after-acquired accounts receivable in a situation like this. However, we see no need to follow the line of reasoning in *Citizens Fidelity Bank.* We hold that the amount owed by McKee to DMR remained DMR's account receivable subject to the lien priority of Featherlite by virtue of its perfected materialman's lien and when the lien was released and thus lost, MBank's security interest in DMR's account receivable became superior to Featherlite's unsecured claim. MBank's Points of Error Nos. One and Two are sustained.

■■■■ Having sustained its first two points, we find it unnecessary to consider MBank's third point. In its cross-point of error, Featherlite argues that by its having released its materialman's lien in exchange for McKee's letter confirming that it would draw a check payable jointly to DMR and Featherlite when the retainage funds became available, a novation was constituted which somehow kept alive its previous priority, presumably on the theory that the money owed had forever lost its status as DMR's account receivable. Featherlite correctly recites the four essential elements of a novation: a previous valid obligation, a mutual agreement of all parties to acceptance of a new contract, a substitution of the contract for the old, effecting its extinguishment, and a valid new agreement. *Commercial Credit Corporation v. Brown*, 471 S.W.2d 914, 919 (Tex.Civ.App. —Amarillo 1971, writ ref'd n.r.e.). We disagree with Featherlite that the facts here present "a classic case of a true novation." The trial court was correct in finding that a novation had not resulted from the McKee letter.

■■■■ The previous valid obligation in this case was the contractual agreement, and indebtedness arising therefrom, between DMR and Featherlite, not the lien asserted against the owner's property. While the owner is obligated under Section 53.101 of the Property Code to retain at least ten percent of the contract price, the owner does not become obligated in the sense of becoming indebted to a lienholder. The owner is obligated for his own protection to see that the retainage is paid out in accordance with the provisions of Chapter 53 of the Property Code in order to obtain a release of the lien under Section 53.152. A materialman's claim against a contractor or subcontractor frequently, as in this case, exceeds the amount of retainage. The materialman with a valid lien will get what he can out of the retainage but if that is insufficient, he still has his claim for the shortfall against the party to whom he sold the materials. However, all of the materialman's rights to the retained funds are contingent upon having a valid lien. A release of lien, valid on its face, is, until set aside, a complete bar to any action by the former lienholder based on matters covered and discharged by the release. *Hart v. Traders & General Ins. Co.*, 144 Tex. 146, 189 S.W.2d 493, 494 (1945); *Turner v. PV International Corporation*, 765 S.W.2d 455, 463 (Tex.App.—Dallas 1988), *writ denied*, 778 S.W.2d 865 (Tex.1989). Featherlite's cross-point of error is overruled.

Judgment of the trial court is reversed and judgment is hereby rendered that MBank recover the entire amount, including accrued interest, now on deposit in the office of the District Clerk of El Paso County, Texas, standing in the registry of the 205th District Court in this cause. All costs of this appeal are assessed against Featherlite.

## OPINION ON APPELLEE'S MOTION FOR REHEARING

■■■■ Appellee Featherlite Corporation is correct in its assertion that the Court misstated the law when in the foregoing opinion it said, "While the owner is

obligated under Section 53.101 of the Property Code to retain at least ten percent of the contract price, the owner does not become obligated in the sense of becoming indebted to a lienholder." The Court meant to say, "While the owner is obligated under Section 53.101 of the Property Code to retain at least ten percent of the contract price, the owner does not become obligated in the sense of becoming indebted to a lienholder *outside the existence of the latter's lien.*" In other words, the owner is personally liable to the lienholder for his ratable share of the ten percent retainage only if the lienholder gave proper notice, as required by Section 53.051, et seq., to the owner, *a lien has been properly secured, and the claim has been reduced to judgment.* Tex.Prop.Code Ann. sec. 53.084 (Vernon 1984). Once the lien is released, the owner is no longer personally liable to the former lienholder. As far as the owner, Brock Residence Inn, is concerned, it matters little whether the retainage was paid by the owner to McKee before or after the release of lien was delivered by Featherlite to McKee.

Featherlite maintains that there was a novation between the owner, McKee and Featherlite to the effect that Featherlite promised the owner that it would discharge the lien indebtedness if McKee promised Featherlite to pay the retainage it received from the owner to Featherlite. The problem with Featherlite's novation theory is that, under the stipulated facts, there is no evidence that Featherlite made any promise to the owner, and even if there had been such a promise, the claim would be against McKee for breach of contract and not against the retainage funds which lost their character as such once the lien was released.

Our original holding remains the same, that the judgment of the trial court is reversed and rendered as set forth in that opinion.